Sam ZARZANA, Appellant

v.

Donald ASHLEY and Charles Ashley d/b/a Meineke Car Care # 10, Appellees.

No. 14–06–00100–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 23, 2007.

Robert E. Hudson, Houston, for appellants.

Mattie Rodgers Ashley, Houston, for appellees.

Panel consists of Chief Justice HEDGES and Justices YATES and SEYMORE.

## OPINION

LESLIE BROCK YATES, Justice.

In four issues, appellant Sam Zarzana appeals from the trial court's grant of summary judgment in favor of appellees Donald Ashley and Charles Ashley d/b/a Meineke Car Care # 10 on his claims of negligence, fraud, violation of the Deceptive Trade Practices–Consumer Protection Act, and civil conspiracy. We affirm.

### I. Factual and Procedural Background

On March 5, 2003, Sam Zarzana went to Meineke Car Care # 10 ("Meineke") in Houston, Texas, co-owned and operated by Donald Ashley, to replace the muffler and exhaust pipe on his truck. Ashley typically managed the store, but he was not present on this day. His longtime employee, Ken Samuel, was present and acted as manager in Ashley's absence. According to Zarzana, after an employee who re-

ferred to himself as "Shorty" finished replacing the parts on Zarzana's truck, the employee informed Zarzana that his state safety inspection sticker had expired. Shorty offered to perform an inspection and provide a current sticker if the truck passed, all for about forty dollars, and Zarzana agreed. Meineke did not display any signs on its premises indicating it served as an official state safety inspection facility and had no equipment capable of producing official or other inspection stickers. Zarzana admits he never saw a state inspection sign at Meineke but maintains he did know that only state-designated facilities may perform safety inspections and issue inspection stickers.

Shorty then told Zarzana to continue waiting in the office while he inspected the truck, and Zarzana complied. After completing the alleged inspection, Shorty told him the truck passed and accordingly applied a purported state safety inspection sticker to the windshield. Although he admits he did not see all of the repair work or witness Shorty perform the inspection, Zarzana maintains that he saw Shorty place the sticker onto the windshield. Zarzana then paid Samuel the sum due in cash, which Zarzana claims included an amount for the inspection, and left the store. Zarzana's sales receipt shows he paid for three exhaust system parts but does not reveal any charges for a state safety inspection or sticker. He does not know whether Shorty was present in the office during payment.

According to Zarzana, some months after his trip to Meineke, a Houston Police officer arrested him for possessing a counterfeit safety inspection sticker. He claims he was incarcerated for approximately eighteen hours and charged for the offense, which was dismissed several months later.

Zarzana filed suit against Meineke, seeking recovery for "profound mental anguish" as well as various expenses and lost wages arising from his incarceration and criminal prosecution. In his original petition, Zarzana first alleged that Meineke, through its agent, Shorty, knowingly and intentionally committed an unconscionable action under the Deceptive Trade Practices–Consumer Protection Act (the "DTPA"). He further contended Meineke committed negligence or gross negligence "in permitting a situation to exist in their place of business in which a scam such as is involved herein is possible" and that such negligence proximately caused his damages. Zarzana also alleged that Meineke was vicariously liable for Shorty's fraud, as he was acting within the course and scope of his employment and had either actual or apparent authority to inspect Zarzana's truck and issue a safety inspection sticker.

Meineke moved for summary judgment, claiming Zarzana produced no evidence that an employee named Shorty worked at the store or that Shorty, or any other Meineke employee, had performed an inspection or sold Zarzana an inspection sticker. Meineke attached affidavits of Ashley and Samuel stating that neither knew or had ever employed someone named "Shorty" and noting that Zarzana's service receipt listed no charges for an inspection. Therefore, Meineke contended, it was generally entitled to a no-evidence summary judgment. Meineke also sought a traditional summary judgment, first claiming that Zarzana provided no evidence of negligent supervision because it was unforeseeable that a Meineke employee could perform a state safety inspection and issue a counterfeit inspection sticker, given that the store does not operate as a state inspection facility, no signs indicated that it did, and the store had no equipment capable of producing an inspec-

tion sticker. For similar reasons, Meineke further argued that, even had an alleged employee sold a counterfeit sticker, Zarzana produced no evidence that such action fell within the course and scope of employment because, according to Ashley's and Samuel's affidavits, Meineke employees had authority only to install tail pipes, brakes, and catalytic converters and perform light mechanical work. Therefore, Meineke reasoned, Zarzana could not impute Shorty's alleged conduct to Meineke under the doctrine of respondeat superior. Meineke finally contended it was also not vicariously liable under respondeat superior for Shorty's alleged actions because they constitute intentional, serious criminal activities unforeseeable to Meineke, again given its employees' duties. Meineke did not expressly address Zarzana's DTPA claim in its motion.

Thereafter, Zarzana filed a response to the motion for summary judgment along with an affidavit swearing: (1) that a worker named "Shorty" offered to inspect his truck, (2) he waited in the Meineke office while the inspection occurred, (3) he watched "Shorty" place the sticker on his windshield after purportedly passing inspection, and (4) he paid for the amount requested which included the amount for the inspection. Zarzana further stated in his affidavit that "[f]rom all appearances, Shorty was an employee engaged in the furtherance of the shop's business" and he "represented to [Zarzana] that he was qualified and authorized to [conduct the inspection]." In his written response, Zar-

zana maintained that summary judgment for negligent supervision was improper because Shorty's alleged conduct was foreseeable because "it is certainly foreseeable that dishonest employees might defraud a customer if [an employer] is not present to prevent it" or otherwise has no procedures to make such fraud impossible. Zarzana further noted that Meineke's motion failed to address his DTPA claim.

On the same day, Zarzana filed a second amended original petition in which he reasserted all his previous causes of action and added a new allegation of civil conspiracy to defraud.[1] Meineke never amended its motion to expressly address the later-pleaded civil conspiracy claim or to address the DTPA claim.[2]

The trial court granted Meineke's motion for summary judgment without specifying the grounds. Zarzana now appeals, claiming fact issues exist regarding negligent supervision, vicarious fraud, violation of the DTPA, and civil conspiracy to defraud, which preclude summary judgment.

## II. Standard of Review

The standard of review for a traditional motion for summary judgment is whether the successful movant at the trial level carried its burden of showing that there is no genuine issue of material fact and that judgment should be granted as a matter of law. *See* Tex.R. Civ. P. 166a(c); *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999). A defendant who either conclusively ne-

---

**1.** The second amended original petition became the live pleading, as it was filed over seven days before the date set for the summary judgment hearing. *See* Tex.R. Civ. P. 63; *Sosa v. Cent. Power & Light,* 909 S.W.2d 893, 895 (Tex.1995).

**2.** In the second amended original petition, Zarzana also added a vice principal theory of liability, claiming that Samuel constituted a

vice principal of Meineke, and, as such, all of his conduct imputed to Meineke. However, Zarzana does not specifically complain to this court that Ashley failed to address his vice principal pleading, nor does he otherwise mention the vice principal pleading on appeal. Therefore, Zarzana has waived any error relating to his vice principal pleading.

gates at least one of the essential elements of each of the plaintiff's causes of action or conclusively establishes all elements of an affirmative defense is entitled to summary judgment. *Johnson v. Felts,* 140 S.W.3d 702, 706 (Tex.App.-Houston [14th Dist.] 2004, pet. denied). In order to conclusively negate at least one of the requisite elements, the motion must identify or address the cause of action or defense and its elements. *Id.* Evidence is conclusive only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson,* 168 S.W.3d 802, 816 (Tex.2005). Under this traditional standard, this court must take as true all evidence favorable to the nonmovant and must make all reasonable inferences in the nonmovant's favor. *See id.*

In contrast, the party moving for no-evidence summary judgment must assert only that there is no evidence of one or more essential elements of a claim or defense on which the non-movant would have the burden of proof at trial. *See* Tex.R. Civ. P. 166a(i). The burden then shifts to the non-movant to produce evidence raising a fact issue on the challenged elements. *See id.* A no-evidence summary judgment is improper if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *Id.; see Forbes Inc. v. Granada Biosciences, Inc.,* 124 S.W.3d 167, 172 (Tex.2003). Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact. *Forbes,* 124 S.W.3d at 172. More than a scintilla of evidence exists if it would allow reasonable and fair-minded people to differ in their conclusions. *Id.* As with a traditional summary judgment, we view the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences. *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex.2003).

Moreover, when the trial court does not specify the basis for its summary judgment, we will affirm the judgment if any one of the theories advanced in the motion is meritorious. *Joe v. Two Thirty Nine Joint Venture,* 145 S.W.3d 150, 157 (Tex. 2004). In other words, the appealing party must show each independent ground alleged is insufficient to support the summary judgment granted. *See Star–Telegram, Inc. v. Doe,* 915 S.W.2d 471, 473 (Tex.1995).

## III. Analysis

### A. Negligent Supervision

■ In issue two, Zarzana contends the trial court erred in granting summary judgment on his negligent supervision claim.[3] Meineke counters that summary judgment was proper because Zarzana provided no evidence that the conduct of "Shorty," if it occurred, was foreseeable to Meineke.[4] A claim of negligent hiring and

---

**3.** We acknowledge that the intermediate courts appear to disagree over whether parties may bring negligent supervision causes of action to recover for damages that do not constitute physical, personal injuries. *See Garcia v. Allen,* 28 S.W.3d 587, 592 (Tex.App.-Corpus Christi 2000, pet. denied) (observing that some Texas courts have typically applied negligent supervision in situations that involve physical danger or where alleged negligent supervision caused harm to third persons rather than co-workers, but other Texas

courts have declined to do so); *see also Verinakis v. Med. Profiles, Inc.,* 987 S.W.2d 90, 97 (Tex.App.-Houston [14th Dist.] 1998, pet. denied) (holding that in negligent supervision action, duty of employer extends only to prevent employee from causing physical harm to third party). However, we need not address whether Zarzana properly pleaded negligent supervision because neither party presented this issue to the trial court or to this court.

**4.** In issue one, Zarzana contends the court improperly granted no-evidence summary

supervision is based on an employer's direct negligence instead of the employer's vicarious liability for the torts of its employees. *Verinakis v. Med. Profiles, Inc.,* 987 S.W.2d 90, 97 (Tex.App.-Houston [14th Dist.] 1998, pet. denied). To prevail in a negligence action, the plaintiff must prove: (1) a legal duty owed to the plaintiff, (2) a breach of that duty by the defendant, and (3) damages proximately caused by the breach. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990).

■ Generally, an employer has a duty to control its employees. *See Otis Eng'g Corp. v. Clark,* 668 S.W.2d 307, 309 (Tex.1983). Further, an employer may be liable for a plaintiff's injuries that arise as a result of the employment, if the negligence in supervising the employee is the proximate cause of the injuries to the plaintiff. *Dailey v. Albertson's, Inc.,* 83 S.W.3d 222, 227 (Tex.App.-El Paso 2002, no pet.). The questions of duty and proximate cause both hinge on a determination of foreseeability of harm. *Mellon Mortgage Co. v. Holder,* 5 S.W.3d 654, 659 (Tex.1999). Foreseeability requires "that the injury be of such a general character as might reasonably have been anticipated." *Id.* at 655. To impose liability in negligent hiring and supervision cases, sufficient evidence must exist indicating that the defendant knew or should have known of the employee's incompetence or potential for causing harm. *See Phillips,* 801 S.W.2d at 526; *Ianni v. Loram Maint. of Way, Inc.,* 16 S.W.3d 508, 514 (Tex. App.-El Paso 2000, pet. denied) (citing *Phillips* ); *see also Wrenn v. G.A.T.X. Logistics, Inc.,* 73 S.W.3d 489, 496–97 (Tex.App.-Fort Worth 2002, no pet.).

■ Zarzana contends that employers have "an absolute duty to see to it that his business is operated with basic honesty" and can "always foresee that employees . . . left unsupervised to operate a business . . . might operate that business in a dishonest fashion to the detriment of the consuming public." However, this contention overstates the employer's duty to control employees and disregards the very definitions of negligence and foreseeability. Indeed, Zarzana has not produced or pointed to any evidence that Meineke knew or should have known of Shorty's propensity for criminality. The record reveals no evidence that any prior similar incidents involving Shorty occurred or that anyone at Meineke otherwise knew of his criminal disposition. *See Knight v. City Streets, L.L.C.,* 167 S.W.3d 580, 584 (Tex. App.-Houston [14th Dist.] 2005, no pet.) (affirming summary judgment dismissing negligent supervision claim against nightclub for failing to stop employee's assault on third party where evidence showed employer did not know of employee's general propensity for aggression but only that he may be aggressive); *Garrett v. Great W. Distrib. Co. of Amarillo,* 129 S.W.3d 797, 804 (Tex.App.-Amarillo 2004, pet. denied) (affirming summary judgment dismissing negligent supervision action against employer based on employees' assault of third party where no evidence showed that employees exhibited violent or aggressive tendencies or engaged in fights before incident and no evidence suggested employer knew employees had violent propensities before incident); *Dailey,* 83 S.W.3d at 227–28 (affirming summary judgment dis-

---

judgment in favor of Meineke. In the no-evidence portion of its motion, Meineke asserted that it was entitled to summary judgment because Zarzana produced no evidence he had his car inspected at the store or that an employee sold him an inspection sticker.

It is irrelevant whether Zarzana created a fact issue over whether such conduct occurred because such fact issue would not be dispositive of any issues on appeal. Therefore, we overrule Zarzana's first issue.

missing negligent supervision claim against supermarket based on employee's assault against customer, where only evidence of foreseeability of harm was that employee made loud comments and had heated exchange with customer). Moreover, the record contains no evidence that Meineke could have foreseen even the general nature of the incident, given that the store did not operate or purport to operate as a state-licensed inspection facility and had no equipment or other means to produce inspection stickers on its premises. Accordingly, we hold that Meineke conclusively negated the duty and proximate cause elements of Zarzana's negligent supervision claim by demonstrating a lack of foreseeability; thus, the trial court properly granted summary judgment on this claim.

We overrule Zarzana's second issue.

### B. Vicarious Fraud

In issue three, Zarzana asserts that, because employers are vicariously liable for employees' fraud committed within the scope of the employees' general authority, fact issues remain as to whether Shorty acted within the scope of his authority as a Meineke employee by selling a counterfeit inspection sticker. To hold an employer vicariously liable for the misconduct of its employee, a plaintiff must prove: (1) an agency relationship existed between the employee and the employer, (2) the employee committed the act, and (3) the act was in the course and scope of the employee's authority. *See F.F.P. Operating Partners, L.P. v. Duenez*, No. 02–0381, —— S.W.3d ——, 2006 WL 3110426, at *5 (Tex. Nov.3, 2006); *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex.1998). To show an employee acted within the course and scope of his employment, the plaintiff must demonstrate the conduct occurred (1) within the general authority given the employee, (2) in fur-

therance of the employer's business, and (3) for the accomplishment of the object for which the employee was employed. *Mata v. Andrews Transp., Inc.*, 900 S.W.2d 363, 366 (Tex.App.-Houston [14th Dist.] 1995, no writ); *see also Leadon v. Kimbrough Bros. Lumber Co.*, 484 S.W.2d 567, 569 (Tex.1972). Actual authority includes both express and implied authority and usually denotes the authority a principal (1) intentionally confers upon an agent, (2) intentionally allows the agent to believe he possesses, or (3) by want of due care allows the agent to believe he possesses. *2616 South Loop L.L.C. v. Health Source Home Care, Inc.*, 201 S.W.3d 349, 356 (Tex.App.-Houston [14 Dist.] 2006, no pet.). Apparent authority requires (1) a reasonable belief in the agent's authority, (2) generated by some holding out or neglect of the principal, and (3) justifiable reliance on the authority. *Id.* "Both actual and apparent authority are created through conduct of the principal communicated either to the agent (actual authority) or to a third party (apparent authority)." *Huynh v. Nguyen*, 180 S.W.3d 608, 622–23 (Tex. App.-Houston [14th Dist.] 2005, no pet.). To determine apparent authority, only the conduct of the principal may be considered; representations made by the agent of his authority have no effect. *Id.* at 623.

An employee's intentional, tortious conduct falls within the scope of employment when the conduct, even if contrary to express orders, is of the same general nature as that authorized or incidental to the conduct authorized. *Durand v. Moore*, 879 S.W.2d 196, 199 (Tex.App.-Houston [14th Dist.] 1994, no writ); *see GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 617–18 (Tex.1999) (noting that employers are liable for intentional, unauthorized torts of employees "closely connected with the [employee's] authorized duties").

However, employers are generally not liable for serious criminal acts of employees that are unforeseeable considering the employee's duties. *See Millan v. Dean Witter Reynolds, Inc.,* 90 S.W.3d 760, 768 (Tex.App.-San Antonio 2002, pet. denied); *Hooper v. Pitney Bowes, Inc.,* 895 S.W.2d 773, 778 (Tex.App.-San Antonio 1995, writ denied); *see also Ross v. Marshall,* 426 F.3d 745, 764–65 & n. 85 (5th Cir.2005) ("[U]nder Texas law, an agent's 'serious criminal activity' is almost never taken within the scope of authority granted by the principal[.]").

■ Assuming a Meineke employee named Shorty in fact sold Zarzana a counterfeit inspection sticker, Meineke nonetheless conclusively established that Shorty acted outside the scope of employment. Through the affidavits of both Ashley and Samuel, Meineke provided evidence that its services include only installation of tail pipes, brakes, and catalytic converters, and performance of light mechanical work. The affidavits also underscored Meineke's lack of equipment capable of producing official or counterfeit state inspection stickers. Zarzana did not directly challenge any of this evidence. Moreover, Zarzana does not contend, and we do not find, that the sale of counterfeit inspection stickers is closely connected or incidental to the authorized conduct of physically installing parts and performing mechanical work, nor can we say such activity accomplished the objects for which Meineke allegedly hired Shorty. *Compare Buck v. Blum,* 130 S.W.3d 285, 289 (Tex.App.-Houston [14th Dist.] 2004, no pet.) (affirming summary judgment for hospital in sexual assault claim where doctor allegedly made inappropriate sexual contact with patient during neurological examination, and, thus, act was not closely connected to employment tasks and did not further object of employment), *Wrenn,* 73 S.W.3d at 494–95 (affirming summary judgment for employer in assault claim where employee forklift operator had authority only to operate forklift and assist and direct temporary employees, and employer prohibited use of physical force or verbal threats), *and Morrow v. Daniel,* 367 S.W.2d 715, 718–19 (Tex. Civ. App–Dallas 1963, no writ) (finding no evidence employee was acting as agent of employer company where employee purported to sell company's stock certificates but in fact, unbeknownst to company, substituted and sold phony company's certificates to unknowing third party), *with Durand,* 879 S.W.2d at 200 (affirming finding that doorman acted within scope of employment at nightclub in assaulting patron where evidence showed doorman had authority to control admittance of customers into club and assault constituted "overzealous enforcement of the criteria and procedures used to select waiting customers for admittance into the club"). In addition, as Meineke notes, Shorty's alleged counterfeiting activities could potentially constitute a felony under Texas law. *See, e.g.,* TEX. PENAL CODE ANN. § 37.10(a), (c)-(d) (Vernon Supp.2006) (tampering with governmental records). We find such serious criminal conduct unforeseeable given a Meineke employee's authorized duties. *See Millan,* 90 S.W.3d at 768 (holding that investment company was not vicariously liable for broker's embezzlement of thousands of dollars from client, which in no way related to his authorized brokerage duties and thus greatly exceeded scope of his authority).

■ Zarzana's contention that Shorty had actual or apparent authority to sell counterfeit or even valid safety inspection stickers is unpersuasive. To demonstrate Shorty's authority, Zarzana largely relied on the assertion in his affidavit that Shorty "represented to me that he was qualified and authorized to do this work." Indeed,

he contends that the trial court erred in determining scope of employment as a matter of law "particularly" because Zarzana "was told by [Shorty] that [Shorty] was authorized to conduct safety inspections." Shorty's alleged representations have no effect on our analysis because, as noted, an agent's actual or apparent authority stems solely from the principal's conduct, and any of the agent's representations are wholly irrelevant in determining apparent authority. *See Huynh,* 180 S.W.3d at 623. Moreover, the conclusory statement in his affidavit that "[f]rom all appearances Shorty was an employee engaged in the furtherance of [Meineke's] business" is insufficient in itself to create a fact issue regarding apparent authority.

Therefore, because Meineke conclusively established that Shorty acted outside the scope of employment, we hold that the trial court properly granted summary judgment in favor of Meineke on the claim for vicarious fraud.

We overrule Zarzana's third issue.

## C. Vicarious DTPA Violation and Civil Conspiracy

■■■■ Finally, in issue four, Zarzana contends the trial court erred in granting summary judgment on his vicarious DTPA and civil conspiracy claims because Meineke did not explicitly move for summary judgment these claims. A motion for summary judgment must expressly present the grounds upon which it is made and must stand or fall on such grounds. *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 341 (Tex.1993). Thus, if a motion for summary judgment fails to address a pleaded cause of action, the trial court is generally precluded from granting summary judgment on such action as a matter of law. *Black v. Victoria Lloyds Ins. Co.,* 797 S.W.2d 20, 27 (Tex.1990); *Chessher v. Southwestern Bell Tel. Co.,* 658 S.W.2d 563, 564 (Tex.1983). This holds true re-

gardless of the unaddressed claim's validity. *See Alder v. Laurel,* 82 S.W.3d 372, 375 (Tex.App.-Austin 2002, no pet.) ("[E]ven though a cause of action may not be viable, a party may obtain summary judgment only on those causes of action expressly addressed in the summary judgment motion."). However, where a defendant conclusively disproves an element common among pleaded causes of action, summary judgment is proper. *See Dubose v. Worker's Med., P.A.,* 117 S.W.3d 916, 922 (Tex.App.-Houston [14th Dist.] 2003, no pet.); *Lampasas v. Spring Ctr., Inc.,* 988 S.W.2d 428, 435–36 (Tex.App.-Houston [14th Dist.] 1999, no pet.). Similarly, summary judgment may be granted on later-pleaded causes of action if the grounds actually asserted show that the plaintiff could not recover on the later-pleaded cause of action. *Ortiz v. Collins,* 203 S.W.3d 414, 423 (Tex.App.-Houston [14th Dist.] 2006, no pet.).

While Meineke never explicitly addressed the vicarious DTPA claim, it thoroughly addressed and negated the scope of employment element of Zarzana's vicarious fraud claim, which was an alternative action based on Shorty's same underlying conduct. Accordingly, we find that by conclusively negating that Shorty's alleged actions occurred within the scope of his employment under Zarzana's vicarious fraud claim, Meineke negated the same essential element common to his vicarious DTPA claim. *See Dubose,* 117 S.W.3d at 922; *see, e.g., Atwood v. Kansas City Life Ins. Co.,* No. 14–96–00048–CV, 1997 WL 567941, at *9 (Tex.App.-Houston [14th Dist.] Sept. 11, 1997, no pet.) (not designated for publication) (affirming summary judgment dismissing vicarious DTPA violations against insurance company where company conclusively established that insurance agent acted outside scope of employment); *River Mountain at Brecken-*

*ridge, Inc. v. Mut. of N.Y. Fin. Serv.,* No. C14–94–00084–CV, 1994 WL 652766, at *4 (Tex.App.-Houston [14th Dist.] Nov. 17, 1994, writ denied) (not designated for publication) (affirming summary judgment dismissing "all . . . vicarious liability claims" against financial corporation, which included DTPA claim based solely on employee's actions, where corporation conclusively established that employee had no authority to bind corporation). *See generally Qantel Bus. Sys., Inc. v. Custom Controls Co.,* 761 S.W.2d 302, 305 (Tex.1988) (recognizing vicarious liability theory of respondeat superior as valid basis for creating liability under DTPA). Therefore, we hold that the trial court properly granted summary judgment in favor of Meineke on the vicarious DTPA claim.

■ Meineke similarly failed to explicitly address Zarzana's later-pleaded civil conspiracy to defraud claim by not amending its motion for summary judgment. However, conspiracy is not an independent cause of action but requires an underlying tort, which may include fraud. *See, e.g., Ortiz,* 203 S.W.3d at 422; *Vinson & Elkins v. Moran,* 946 S.W.2d 381, 411–13 (Tex. App.-Houston [14th Dist.] 1997, writ dism'd by agr.). If summary judgment is proper on a fraud claim, summary judgment is proper on a concomitant conspiracy to defraud claim. *See Ortiz,* 203 S.W.3d at 422–23 (holding that where summary judgment was proper on underlying fraud claim due to lack of justifiable reliance, summary judgment was also proper on conspiracy to defraud claim). In his original petition, Zarzana pleaded only a vicarious theory of fraud against Meineke based on Shorty's alleged conduct. As stated above, the trial court correctly granted summary judgment on the vicarious fraud claim. As such, we hold that Meineke's motion was sufficiently broad to encompass the later-pleaded conspiracy claim be-

cause it addressed and negated the only underlying fraud claim that Zarzana pleaded, which in turn negated the later-pleaded conspiracy to defraud claim. *See id.* Accordingly, the trial court properly granted summary judgment in favor of Meineke on civil conspiracy.

We overrule Zarzana's fourth issue.

### IV. Conclusion

We affirm the trial court's grant of summary judgment on each of Zarzana's causes of action. First, we affirm summary judgment on the negligent supervision claim because Zarzana failed to raise a fact issue regarding whether the alleged Meineke employee's actions were foreseeable to Meineke. Second, we affirm summary judgment on the vicarious fraud and DTPA claims because Zarzana failed to raise a fact issue regarding whether the alleged Meineke employee's actions fell within the scope of his employment. Finally, we affirm summary judgment on Zarzana's civil conspiracy to defraud claim because Meineke conclusively negated the underlying tort of fraud.

We affirm the trial court's judgment.