# NO. 12-07-00312-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | |
|---|---|
| *JERRY GLASS and TERRI FLETCHER, as PERSONAL REPRESENTATIVES of the ESTATE OF HERMAN GLASS and GLASS TEXACO DISTRIBUTORS, INC., APPELLANTS* | § *APPEAL FROM THE 369TH* |
| *V.* | § *JUDICIAL DISTRICT COURT OF* |
| *GARY WILLIAMS, APPELLEE/CROSS-APPELLANT* | |
| *V.* | |
| *MOTIVA ENTERPRISES, L.L.C. and BORDERS & LONG OIL, INC., CROSS-APPELLEES* | § *ANDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Jerry Glass and Terri Fletcher, as the personal representatives of the estate of Herman Glass, and Glass Texaco Distributors, Inc. (collectively Glass) appeal from the trial court's judgment ordering them to pay damages for injuries sustained by Gary Williams, a customer in a Texaco station owned by Herman Glass.[1] In fifteen issues, Glass complains of the jury's answers regarding their liability for Williams's injury as well as the damage awards. Williams raises conditional issues complaining of the directed verdict in favor of defendants Motiva Enterprises, L.L.C. and Borders & Long Oil, Inc. We reverse and render judgment for Glass without reaching Williams's conditional issues.

---

[1] Herman Glass died while this case was pending and his estate was added as a party.

BACKGROUND

Philip Chang operated a Texaco station owned by Herman Glass in Frankston, Texas. On the night of April 26, 2004, Austin Davis went to the station to get something to eat. While there, Davis asked Chang if he sold bullets. During the ensuing conversation, Chang retrieved first one hand gun from the back of the store, then a second, and showed them to Davis. Chang also showed the second gun to Williams, who had entered the station to buy a hot dog. According to Davis, Chang was "playing around" like "in a western story" drawing his gun, when it went off. Chang accidentally shot Williams. The bullet lodged near Williams's spine, where it remains.

Pursuant to his seventh amended petition, Williams sued Chang, individually and doing business as P.C. Texaco; Herman Glass; Jerry Glass and Terri Fletcher, as personal representatives of the estate of Herman Glass; Glass Texaco Distributors, Inc.; Motiva Enterprises, L.L.C.; and Borders & Long Oil, Inc. Based on respondeat superior, agency, and joint enterprise theories, Williams alleged joint and several liability for negligence and premises liability against all defendants. Additionally, he alleged breach of contract against Motiva and Borders & Long and gross negligence against Chang.

Before the case was sent to the jury, the trial court directed a verdict in favor of Motiva and Borders & Long on all causes of action, and Williams withdrew his gross negligence complaint against Chang. The jury determined that the defendants were not engaged in a joint enterprise. However, the jury found that the negligence of Chang, Herman Glass, and Glass Texaco Distributors, Inc. proximately caused the occurrence in question, that Chang was acting as an agent or apparent agent for Herman Glass and Glass Texaco Distributors, Inc., and that he was acting within the course and scope of his agency or apparent agency at the time of the shooting. The jury awarded Williams a total of $750,000.00 in damages. The trial court entered a judgment reflecting those findings and ordering that Williams recover $750,000.00 plus interest and costs from Chang,[2] the personal representatives of the estate of Herman Glass, and Glass Texaco Distributors, Inc., jointly and severally.

## COURSE AND SCOPE

In their third issue, Glass contends it was error to submit Question 4 to the jury regarding whether Chang was acting within the course and scope of an agency or apparent agency relationship, error to deny their motion to disregard the jury's answer to Question 4, and error for the trial court to

---

[2] Chang did not appeal the trial court's judgment.

render a verdict based upon that finding. They argue that there is no evidence to support submission of the question, the jury's answer, or the verdict, and that the overwhelming evidence establishes as a matter of law that Chang's actions were outside the course and scope of the alleged agency relationship between Chang and Glass.

## Standard of Review

To disregard a jury finding, the trial court must find the issue is immaterial or the finding is unsupported by the evidence. *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994). The jury finding may be immaterial because it should not have been submitted, it was properly submitted but rendered immaterial by other findings, or calls for a finding beyond the province of the jury, such as a question of law. *Id*.

When the appellant is challenging the legal sufficiency of the evidence to support a finding on which it did not have the burden of proof at trial, the appellant must demonstrate on appeal that no evidence exists to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). In reviewing for legal sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict. *See AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008). The test for legal sufficiency "must always be whether the evidence at trial would enable [a] reasonable and fair–minded [fact finder] to reach the [result] under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). Legal sufficiency review must credit favorable evidence if a reasonable fact finder could, and disregard contrary evidence unless a reasonable fact finder could not. *Id.* The fact finder is the sole judge of the credibility of the witnesses and the weight to be assigned to their testimony. *Id*. at 819.

## Applicable Law

Negligence in the conduct of another will not be imputed to a party if he neither authorized such conduct nor participated therein, nor had the right or power to control it. *See Kennedy v. Am. Nat'l Ins. Co.*, 130 Tex. 155, 159, 107 S.W.2d 364, 366 (1937). Conversely, under the doctrine of respondeat superior, a principal or employer is vicariously liable for the negligence of an agent or employee acting within the scope of his agency or employment. *See Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998). To show an employee acted within the course and scope of his employment, the plaintiff must demonstrate the conduct occurred within the general authority given the employee, in furtherance of the employer's business, and for the accomplishment of the object for which the employee was employed. *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002).

With regard to the element of general authority, the conduct must be of the same general nature

3

as that authorized by the employer or incidental to the conduct so authorized. *Id*. Actual authority includes both express and implied authority and usually denotes the authority a principal intentionally confers upon an agent, intentionally allows the agent to believe he possesses, or by way of due care allows the agent to believe he possesses. *Zarzana v. Ashley*, 218 S.W.3d 152, 159 (Tex. App.– Houston [14th Dist.] 2007, no pet.). Apparent authority requires a reasonable belief in the agent's authority, generated by some holding out or neglect of the principal, and justifiable reliance on the authority. *Id*. Both actual and apparent authority are created through conduct of the principal communicated either to the agent (actual authority) or to a third party (apparent authority). *Id*. To determine apparent authority, only the conduct of the principal may be considered; representations made by the agent of his authority have no effect. *Id*.

Furthermore, "when the servant turns aside, for however short a time, from the prosecution of the master's work to engage in an affair wholly his own, he ceases to act for the master and the responsibility for that which he does in pursuing his own business or pleasure is upon him alone." *Tex. & P. Ry. Co. v. Hagenloh*, 151 Tex. 191, 201, 247 S.W.2d 236, 241 (1952). A master is liable for acts of his servant under the doctrine of respondeat superior only where the relationship of master and servant exists at the time and in respect to the very thing causing the injury and from which it arises. *Smith v. Universal Elec. Constr. Co.*, 30 S.W.3d 435, 439 (Tex. App.–Tyler 2000, no pet.).

**Discussion**

The jury found that an agency relationship existed between Chang and Glass. Although there was some dispute about the exact nature of the relationship, for our purposes we can assume the record supports that finding. The jury also found that, at the time of the occurrence in question, Chang was acting within the course and scope of his agency or apparent agency relationship with Glass. We therefore review the record to determine if a reasonable jury could find that showing guns to customers and playing with guns in front of customers were within the course and scope of Chang's agency relationship with Glass.[3]

Chang testified that the primary objective of the station was to sell gas. He ran the gas station and operated a snack shop at that location. Chang was responsible for posting gas prices at the pump

---

[3] Williams moved to strike Exhibit C in the appendix attached to Glass's brief because it contains documents not presented to the trial court or jury and not included in the appellate record. Generally, material outside the record that is improperly included in or attached to a brief may be stricken. *Siefkas v. Siefkas*, 902 S.W.2d 72,74 (Tex. App. -- El Paso 1995, no writ). Accordingly, we grant Williams's motion to strike Exhibit C of Glass's brief. We do not consider Exhibit C for any purpose.

4

and making sure customers paid for the gas. He was responsible for cleaning spills off the floor. He hired the employees who worked in the store. He set the employees' schedules and trained them. He purchased items from vendors and sold the items in his store. Chang testified that he obtained the guns for his personal protection because he sometimes slept overnight in the back of the store. Furthermore, he was not in the process of defending the station, or even himself, at the time he shot Williams.

Herman Glass never told Chang to keep guns in the station, show guns to customers, play with guns in front of customers, or discuss guns with customers. There is nothing in the record from which the jury could conclude, or reasonably infer, that Chang had either actual or apparent authority to participate in any activity involving guns. Showing guns to customers, or even having guns in the store, did not further any of Chang's responsibilities at the station, nor did those activities further Glass's business. *See Minyard Food Stores, Inc.*, 80 S.W.3d at 577. Likewise, showing guns to customers, discussing guns with customers, and playing with guns in front of customers are not actions of the same general nature as the conduct authorized, closely connected to Chang's tasks, or incidental to the conduct authorized. *See id*.

Williams argues that "being friendly with the station's customers was a part of Chang's job and the evidence demonstrates that his handling of the pistol that night was part of his friendly interaction with customers." He asserts that the subject was raised when Davis asked Chang if he carried bullets in his store for sale. That inquiry, the argument continues, led to Chang's retrieval of his guns from the back of the store to show first to Davis, and then to Williams after he entered the store.

While it might ordinarily make good business sense to be friendly to the customers, we disagree that handling a gun furthers Glass's business of running a gas station. Although helping customers with their purchases and answering questions as to whether a certain item is stocked are likely authorized activities, handling guns was not within the course and scope of Chang's authority. Even if being friendly with customers was within the course and scope of Chang's authority, Chang ceased to act for Glass when he went to the back and retrieved his personally owned gun to show to customers who happened to be in the store. From that moment on, he clearly departed from the service of Glass, the principal, and he was engaged in an affair wholly his own. The responsibility for damage done while pursuing his own purposes is his alone. *See Hagenloh*, 151 Tex. at 201, 247 S.W.2d at 241. Chang's actions were not merely a misuse of his authority; they were utterly unrelated to his duties. *See ANA, Inc. v. Lowry*, 31 S.W.3d 765, 770 (Tex. App.–Houston [1st Dist.] 2000, no pet.). Because Chang

5

deviated from the performance of his duties for his own purposes and Williams's injury did not arise from an act within the Chang/Glass master-servant relationship, Glass is not responsible for Chang's negligence in shooting Williams during that deviation. *See Minyard Food Stores, Inc.*, 80 S.W.3d at 577; *Smith*, 30 S.W.3d at 439. There is no evidence to support the jury's finding that Chang was acting within the course and scope of his agency relationship with Glass at the time he shot Williams. *See Minyard Food Stores, Inc.*, 80 S.W.3d at 577; *Croucher*, 660 S.W.2d at 58. We sustain Glass's third issue.

<h2 align="center">CONCLUSION</h2>

Because there is no evidence to support the jury finding that Chang was acting within the course and scope of his agency relationship with Glass at the time he shot Williams, Glass cannot be held liable for the damages incurred by Williams. Due to our disposition of Glass's third issue, we need not reach their remaining issues or Williams's conditional issues. *See* TEX. R. APP. P. 47.1. We *reverse* the trial court's judgment as to Jerry Glass and Terri Fletcher, personal representatives of the estate of Herman Glass, and Glass Texaco Distributors, Inc. and *render* a take nothing judgment in their favor.

                                                  **JAMES T. WORTHEN**
                                                      Chief Justice

Opinion delivered April 15, 2009.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)