Reversed and Rendered and Memorandum Opinion filed April 14,
2011.

 

In
The

Fourteenth
Court of Appeals



NO. 14-10-00299-CV



Charles Watkins, Appellant 

v.

Daniel J.
Basurto, Appellee 



On Appeal from
the 165th District Court

Harris County, Texas

Trial Court
Cause No. 2007-15897



 

MEMORANDUM OPINION

Appellee Daniel J. Basurto sued appellant Charles
Watkins and several other defendants—Sierra Grill Properties, Inc., Sierra
Grill Inc., and Houston Sierra Grill Properties, Ltd. D/B/A The Tavern—for
personal injuries resulting from an assault against Basurto committed by
bouncers at a bar.  After a bench trial, the trial court entered a judgment for
money damages solely against Watkins, and the court made findings of facts and
conclusions of law.

In two issues, Watkins argues that the evidence is legally
and factually insufficient to support the trial court’s findings that Watkins
was the alter ego of the entities involved in the operation of the bar and that
Watkins was individually liable under a theory of negligent hiring and
supervision.  We reverse the trial court’s judgment and render judgment that
Basurto take nothing from Watkins.

Factual
& Procedural Background

Basurto was a frequent
patron of a bar and restaurant known as The Tavern.  Several business entities
were involved in the operation of The Tavern.  In particular, 1340 Tavern on
Gray, LLC, managed the operations, money, and income of The Tavern, but another
entity, Tips Blue Agave, LLC, held the liquor license and employed the staff of
The Tavern.[1] 
Watkins was the registered agent for, and a member of, both entities.  

On December 21, 2006, Basurto witnessed and
videotaped several employees at The Tavern assaulting a customer.  Basurto
testified that the bouncers were not happy about him videotaping the incident. 
He went to The Tavern the following night, and after he picked up some drinks
that were not his, he was escorted out of the establishment by a manager and
bartender, Josh Guzman.  Basurto testified that a manager grabbed his arm and
brought him outside to where two bouncers were waiting.  The bouncers pulled
Basurto’s shirt over his head and punched his face and chest.  Guzman
acknowledged that he pushed Basurto and put his hands on Basurto before the
fight began.

Basurto pulled his shirt off so he could see, and he
tried to escape the altercation.  But when he lost his shirt, he yelled at the
bouncers and asked for his shirt.  Basurto testified that one of the bouncers
ran toward him and hit him in the face.  The next thing Basurto knew, he was on
the ground being kicked repeatedly in the face, head, and chest while three or
four men surrounded him.

Jacob Grove was a bouncer at The Tavern, and he was
arriving for work that night when he saw Guzman escorting Basurto out of the bar. 
Grove testified that Basurto threw a punch at him, and so he picked up Basurto
and threw him on the ground.  Grove then got on top of Basurto and put his knee
into Basurto’s chest.  Grove testified, “I hit him,” and then, “I hit him
again, you know, just to try to calm him down . . . .  I don’t know if it was
the first punch, the second punch but, you know, I hit him in the mouth.  I got
real bad fight bight.”  Grove explained, “I laid into him. . . . If he’s
hitting me from the bottom and scratching me, then I am going to lay into him.”[2]  Basurto
suffered from a left orbital fracture, and he required surgery to place a
titanium plate underneath the skin of his face.

Grove had been previously convicted of evading arrest
in a motor vehicle, driving with a suspended license, and possessing marijuana. 
Guzman had been convicted of some misdemeanors, but the record does not contain
evidence of the subject matters of those convictions.[3]  Watkins
testified that it was not his practice to run background checks when hiring
employees, and he did not run background checks on Guzman or Grove.  However,
he acknowledged, “[I]f I knew somebody with a criminal history, that would
definitely influence my judgment to hire them.”

Lucy Anderson, a waitress and bartender at The
Tavern, explained that there had been some other fights at The Tavern in 2006,
but she did not give details about any of the incidents.  Watkins testified
that he would be informed about any incidents, such as a fight, at a weekly
meeting that occurred on a Monday.  He also testified that there was no
standard procedure for notifying him about fights, but he was notified the night
of the assault of Basurto.  He explained that it was “normal procedure” to
press charges against patrons who attacked bouncers.  

Watkins explained that The Tavern did not require any
specific training for bouncers on what to do if combat erupted between a
bouncer and a customer.  Although he testified that he instructed employees to
call police if a customer refused to leave the establishment, he acknowledged,
“[H]onest to God, it’s a hard thing to get people to do, call police when
something hasn’t really started yet because it’s, like, make them leave.”  Bryan
Jugo, a bouncer at the bar who was also involved in the assault on Basurto,
testified that there was no specific training, instruction, or policy about
hitting a customer.

Watkins also testified about the business entities
involved in The Tavern’s operation.  Tips had no income other than payments
from 1340 Tavern for the subcontracting of Tips employees and the use of the
liquor license.  Watkins testified that there were good years and bad years,
and sometimes there were losses.

The trial court rendered a final judgment in favor of
Basurto and entered findings of facts and conclusions of law as follows: 

Findings of Facts

1.           
This was a dispute between Plaintiff Daniel Basurto (hereinafter
“Plaintiff”) and Defendant owner Charles Watkins of the Tavern on Gray (hereinafter
“the Tavern”)

2.           
It was the duty of the court, as the fact finder, to weigh the
credibility of witnesses.  During the course of trial, through the demeanor of
witnesses, it revealed evidence negating the actual words spoken and recorded
in the transcript.

3.           
Any finding of fact that should be characterized as a conclusion of law
is deemed a conclusion of law.

4.           
The Court finds that Plaintiff was a patron to the Tavern on the night
of December 22, 2006, and the Tavern was owned and managed by Defendant Charles
Watkins.  On the evening in question, Plaintiff was viciously assaulted by the
staff of the Tavern.  As a result of this attack, Plaintiff suffered a left
orbital fracture.  The Court finds that Plaintiff incurred reasonable and
necessary medical expenses as the result of the assault.

5.           
The Court finds that Charles Watkins is individually liable for the
conduct of the staff of the Tavern because he had actual and/or constructive
notice of the dangerous propensities of the staff members.  Additionally, Mr.
Watkins took no steps to perform criminal background checks on the bouncers and
provided no training to these individuals.  Adequate evidence of prior assaults
by his bouncers and his knowledge of assaults was presented to the Court.

6.           
The court finds that Bouncer Jacob Grove admitted to assault [sic] Plaintiff
while he was on the ground during cross examination.  Jacob Grove had an
extensive criminal history and had been involved in altercations prior to this
incident.  Charles Watkins was or should have been aware of his violent
tendencies.

7.     
Conclusions of Law

8.           
The Court concludes that the injuries and consequent damages proximately
sustained by Plaintiff were 75% proximately caused by Defendant Charles
Watkins, and 25% caused by the Plaintiff.

9.           
The Court concludes that Defendant Charles Watkins was negligent and
failed to do what a reasonably prudent person would have done under the same or
similar circumstances.

10.       The
Court finds that no reasonable prudent person under the same or similar
circumstances as those faced by Defendant Charles Watkins would have made the
same decisions as Defendant Charles Watkins based on Defendant Charles Watkins’
perception of the facts.

11.       Additionally,
the court finds that Defendant Charles Watkins is the alter-ego of all his
business establishments and Defendants by his extensive control.

12.       The
court concludes that Plaintiff has proven by a preponderance of the evidence
the following sums of damages, which if paid now in cash, would fairly and
reasonably compensate Plaintiff and such damages were proximately caused by the
negligent conduct of Defendants.

Physical pain
Plaintiff sustained in the past:                  $20,000.00

Physical pain
Plaintiff will sustain in the future:           $10,000.00

Mental anguish
Plaintiff sustained in the past:              $15,000.00

Mental anguish
Plaintiff will sustain in the future:         $5,000.00

Reasonable and
Necessary Past medical  bills:              $19,000.00

Total:                                                                                     $69,000.00

13.       The
court finds that Plaintiff shall recover from Defendant Charles Watkins all
taxable court costs incurred.

This appeal followed.

Analysis

A.   
Standard of Review

Under a legal sufficiency review, we must determine
whether the evidence would enable a reasonable and fair-minded person to reach
the finding under review.  City of Keller v. Wilson, 168 S.W.3d 802, 827
(Tex. 2005).  A legal sufficiency challenge must be sustained when (1) the
record shows a complete absence of evidence of a vital fact, (2) the court is
barred from giving weight to the only evidence offered to prove a vital fact,
(3) the evidence offered to prove a vital fact is no more than a mere scintilla,
or (4) the evidence establishes conclusively the opposite of the vital fact.  Id.
at 810; Wiese v. Pro Am Servs., Inc., 317 S.W.3d 857, 860 (Tex.
App.—Houston [14th Dist.] 2010, no pet.).  We credit favorable evidence if
reasonable fact finders could and disregard contrary evidence unless reasonable
fact finders could not.  Wilson, 168 S.W.3d at 827.  We must assume that
the fact finder resolved all conflicts in the evidence and made all credibility
determinations in favor of the verdict.  Id. at 819–20.  We also accept
as true all facts that are uncontroverted on appeal.  See Tex. R. App. P. 38.1(f) (“In a civil
case, the court [of appeals] will accept as true the facts stated [in
appellant’s statement of facts] unless another party contradicts them.”); Davis
v. Mangan, No. 14-04-00650-CV, 2005 WL 1692048, at *1 & n.1, *4 (Tex.
App.—Houston [14th Dist.] July 21, 2005, no pet.) (mem. op.) (citing Tex. R. App. P. 38.1(f)) (concluding
that the trial court erred in finding that the parties divorced in 1998 because
it was uncontested that the parties divorced in 1993).[4]

Generally, when an
appealing party seeks to challenge the sufficiency of the evidence for findings
of facts entered by a trial court, the party should “direct his attack on the
sufficiency of the evidence at specific findings of facts, rather than at the
judgment as a whole.”  Shaw v. Cnty. of Dallas, 251 S.W.3d 165, 169
(Tex. App.—Dallas 2008, pet. denied).  Watkins has failed to assign error to
specific findings.[5] 
However, we construe his points of error liberally to fairly and equitably
adjudicate his rights.  See Tittizer v. Union Gas Corp., 171 S.W.3d 857,
863 (Tex. 2005) (citing Tex. R. App. P.
38.9); see also Tex. R. App. P.
38.1(f) (“Issues Presented. . . . The statement of an issue or point will be
treated as covering every subsidiary question that is fairly included.”).  “A
challenge to an unidentified finding of fact may be sufficient if we can fairly
determine from the argument the specific finding of fact which the appellant
challenges.”  Shaw, 251 S.W.3d at 169.[6]

B.     Negligent
Hiring and Supervision

            In his second
issue, Watkins argues that the evidence is legally and factually insufficient
to support the finding that Watkins owed and breached a duty to Basurto, which
caused Basurto’s injuries.  We hold that the evidence is legally insufficient
to support the finding that any breach of duty by Watkins caused Basurto’s
injuries.  

            For a claim of
negligence, the plaintiff must prove (1) the defendant owed the plaintiff a
legal duty, (2) the defendant breached that duty, and (3) the breach
proximately caused the plaintiff damages.  Zarzana v. Ashley, 218 S.W.3d
152, 158 (Tex. App.—Houston [14th Dist.] 2007, pet. struck).  An employer has a
general duty to control its employees, id., and to adequately hire,
train, and supervise employees to prevent injuries to third parties that are
reasonably foreseeable.  Castillo v. Gared, Inc., 1 S.W.3d 781, 786
(Tex. App.—Houston [1st Dist.] 1999, pet. denied).[7]  If an
employer places its employees in a position where it is foreseeable that the
employees could cause harm to third parties, the employer must take reasonable
steps to prevent that harm, which may include conducting a properly tailored
background investigation.  Compare Read v. Scott Fetzer Co., 990 S.W.2d
732, 736–37 (Tex. 1998) (holding a general contractor liable when in-home
salesperson committed sexual assault after salesperson was hired without a
reference or criminal history check, which would have revealed prior
inappropriate sexual conduct in the workplace and a conviction for indecency
with a child), with Guidry v. Nat’l Freight, Inc., 944 S.W.2d
807, 809–11 (Tex. App.—Austin 1997, no writ) (holding that a trucking company
had no duty to check its driver’s criminal history for sexual misconduct to
ensure long-haul truck drivers would not rape third parties when drivers
stopped for a rest).

Even if an employer owes a duty to third parties, a
plaintiff must establish that the employer’s breach was the proximate cause of
the plaintiff’s injuries.  Read, 990 S.W.2d at 737; Zarzana, 218
S.W.3d at 158.  To show proximate cause, a plaintiff must establish that (1)
the defendant’s conduct was a cause-in-fact of the plaintiff’s injuries and (2)
the plaintiff’s injuries were a foreseeable result of the defendant’s conduct. 
Read, 990 S.W.2d at 737.[8] 
An employer’s breach cannot be the proximate cause of a plaintiff’s injuries if
the employer would have had no reason to know that the employee had a
propensity for causing harm.  See Barton v. Whataburger, Inc., 276
S.W.3d 456, 463–64 (Tex. App.—Houston [1st Dist.] 2008, pet. denied); Zarzana,
218 S.W.3d at 158; Garrett v. Great W. Distrib. Co. of Amarillo, 129
S.W.3d 797, 803–04 (Tex. App.—Amarillo 2004, pet. denied).  

Accordingly, if a night club owner would not have known
of a violent criminal history of its bouncers prior to the bouncers committing
an assault against a club patron, the employer’s failure to investigate or
supervise cannot be the proximate cause of the patron’s injuries.  See Fifth
Club, Inc., v. Ramirez, 196 S.W.3d 788, 796–97 (Tex. 2006) (holding that an
employer night club’s failure to investigate and supervise a security guard who
assaulted a patron was not the proximate cause of the patron’s injuries because
there was no evidence that the employer should have known of any unfitness or
incompetency prior to the assault); cf. Barton, 276 S.W.3d at 463–64
(holding that the employee’s aggravated robbery was a superseding cause not
related to the employer’s failure to discover the employee’s criminal history—namely,
failing to pay child support and selling cocaine—because the employee’s history
did not show a propensity for violence or theft; employee’s participation in
robbery was not foreseeable).

Here, the trial court found that Watkins should have
been aware of the violent tendencies of his employees.  In particular, the
court found in its findings of facts numbered five and six that (1) Watkins
failed to perform background checks on the bouncers, (2) Grove had an extensive
criminal history, (3) Grove had been involved in altercations prior to the
assault on Basurto, (4) Watkins was or should have been aware of Grove’s
violent tendencies, (5) The Tavern’s bouncers had committed prior assaults, (6)
Watkins knew of these assaults, (7) Watkins knew or should have known of the
dangerous propensities of his staff, and (8) Watkins failed to provide the
bouncers with adequate training.  On appeal, Watkins does not specifically
challenge findings of facts numbered five and six, but we conclude that the
briefing fairly raises a challenge to these findings.[9]

Watkins admitted to not running criminal background
checks on his bouncers.  Thus, there is sufficient evidence to support the
trial court’s finding on this fact, which constitutes a breach of duty owed to
Basurto because The Tavern placed its employees in a position that could be
harmful to patrons.  Next, Grove admitted to having convictions for evading
arrest in a motor vehicle, driving with a suspended license, and possessing
marijuana.  Thus, there is sufficient evidence to support the trial court’s
finding that Grove had an extensive criminal history.  

However, the trial court did not find, and there is
no evidence to support an implied finding,[10]
that any of Grove’s crimes involved violence.  None of the crimes were of a
violent nature that would have put Watkins on notice of a propensity for
violence.  Viewing the evidence in the light most favorable to Basurto and
disregarding evidence contrary to the trial court’s findings, there is no
evidence that Watkins’s failure to investigate the bouncers before hiring them proximately
caused Basurto’s injuries.  See Barton, 276 S.W.3d at 463–64 (finding insufficient
evidence of causation for negligent hiring when an investigation would have
revealed only nonpayment of child support and drug convictions, but the
employee subsequently participated in an armed robbery that resulted in the murder
of another employee); cf. Read, 990 S.W.2d at 737 (finding
causation element of negligent hiring satisfied by evidence that an
investigation would have revealed an employee’s prior sexual misconduct, and
the employee subsequently sexually assaulted a third party).

Further, Grove admitted that he had been involved in
“altercations” prior to the assault on Basurto.  Thus, there is sufficient
evidence to support the trial court’s finding on this fact.  However, viewing
the evidence in the light most favorable to Basurto and disregarding contrary
evidence,[11]
there was no evidence that Grove had ever, prior to the incident with Basurto, (1)
engaged in a physical altercation with any person, (2) struck, hit,
kicked, touched, or otherwise physically contacted any person, (3) threatened
to strike, hit, kick, touch, or otherwise physically contact any person, or (4)
caused or threatened to cause a physical injury to any person.  In the absence
of any evidence that Grove was unfit for his position as a bouncer prior to the
assault of Basurto, we conclude that the evidence was legally insufficient to
support the trial court’s finding that Watkins was or should have been aware of
any violent tendencies of Grove.  Accordingly, any failure to supervise Grove
was not the proximate cause of Basurto’s injuries.  See Fifth Club, 196
S.W.3d at 796–97 (holding that a night club’s failure to supervise a security
guard, who assaulted a patron, was not the proximate cause of the patron’s
injuries because there was no evidence that the employer should have known of
any unfitness or incompetency prior to the assault—the guard’s use of profanity
against a member of the public would not put the night club on notice that the
guard posed a risk to the public).

Next, a video was played for the trial court that
showed at least one of The Tavern’s bouncers assaulting a person outside The
Tavern on the night prior to the assault of Basurto, and Basurto testified
about the video.  Thus, there was sufficient evidence to support the trial
court’s finding that The Tavern’s bouncers had committed prior assaults.  However,
viewing the evidence in the light most favorable to Basurto and disregarding
contrary evidence, there was no evidence that (1) any bouncer or manager who
assaulted a patron during any prior incident also assaulted Basurto, or (2) any
bouncer or manager who assaulted Basurto had previously assaulted any other
person.  Basurto was only able to identify one bouncer from the video of the
prior assault—someone named “Court.”  There is no suggestion in the record that
this person assaulted Basurto.  Further, Basurto presented no evidence that
Guzman, Grove, Jugo, or anyone else who was involved in the assault of Basurto
had previously assaulted another person.[12] 
Even if a fact finder could reasonably conclude that Watkins should have known
of the assault from the prior night, there is no evidence that Watkins should
have known that Guzman, Grove, or Jugo was involved in the prior assault or
that these employees had violent tendencies.  See Garrett, 129 S.W.3d at
803 (holding that alcohol-distributor employer was not liable for negligent
hiring and supervision when its employees went to a bar and assaulted a patron
even though other unnamed employees had been involved in a fight at the bar on
a previous occasion; explaining that “no evidence appears of record suggesting
that [the employees involved in this incident] themselves exhibited violent or
aggressive tendencies or engaged in fights at any time before the incident in
question”).  Watkins’s failure to supervise employees who assaulted another
patron cannot be the proximate cause of Basurto’s injuries because there is no
evidence that the employees involved in any prior assault also assaulted
Basurto.

Finally, there was some evidence that The Tavern’s
employees were not trained on the subject of using physical force when dealing
with a disruptive patron: Jugo testified to this fact.  However, viewing the
evidence in the light most favorable to Basurto and disregarding contrary
evidence,[13]
there was still no evidence that training would have prevented Basurto’s
injuries—Basurto presented no evidence about what training the bouncer’s should
have received.  See Castillo, 1 S.W.3d at 781 (holding that the employer
was not required to implement a policy that instructed motel security guards to
not enter rooms of patrons, one of whom was raped by a security guard employee;
explaining that the appellant presented no evidence to establish industry
standards and no evidence that a specific contrary policy advocated by the
appellant would be necessary or desirable, or that failure to have such policies
constitutes negligence); see also Portlock v. Perry, 852 S.W.2d 578, 582
(Tex. App.—Dallas 1993, writ denied) (holding that a corporate officer had no
duty to institute policies or procedures regarding the treatment of patients at
a medical center).  Further, there was no evidence that The Tavern had any
formal or informal policies authorizing bouncers to strike patrons.

For all of these reasons, there is legally
insufficient evidence that Watkins’s negligent hiring or supervision caused
Basurto’s injuries.  Watkins’s second issue is sustained.

C.    Alter Ego
Doctrine

In his first issue, Watkins argues that the evidence
is legally and factually insufficient to support the finding that Watkins was
the alter ego of the entities responsible for operating The Tavern.[14]  We hold
that the evidence is legally insufficient to support this finding.  But even if
the evidence were sufficient, Watkins would not be liable because the trial court
did not assess liability against Watkins under any meritorious theory of
liability.

Generally, members and managers of an LLC are not
liable for judgments against the LLC.  Tex.
Bus. Orgs. Code Ann. § 101.114 (West Supp. 2009).  But courts have
applied corporate veil-piercing principles to members of LLCs.  See McCarthy
v. Wani Venture, A.S., 251 S.W.3d 573, 590–91 (Tex. App.—Houston
[1st Dist.] 2007, pet. denied); Pinebrook Props. Ltd. v. Brookhaven Lake
Prop. Owners Ass’n, 77 S.W.3d 487, 500 (Tex. App.—Texarkana 2002, pet.
denied).  Accordingly, a member of an LLC may be held individually liable for
debts of the LLC if the LLC is a mere alter ego for the member.  See
Pinebrook, 77 S.W.3d at 500.  

Under this theory, courts will hold an LLC member
liable if there exists such unity between the LLC and the member that the LLC
ceases to be separate, and holding only the LLC liable would promote injustice. 
See Mancorp, Inc. v. Culpepper, 802 S.W.2d 226, 288 (Tex. 1990) (citing Castleberry
v. Branscum, 721 S.W.2d 270, 272 (Tex. 1986), superseded on other
grounds by Tex. Bus. Orgs. Code Ann.
§ 21.223(a)(3) (West Supp. 2009)).  To determine whether an LLC is the alter
ego of an individual, fact finders must look to the total dealings of the LLC
and individual, which may include “the degree to which [company] formalities
have been followed and [company] and individual property have been kept
separately, the amount of financial interest, ownership and control the
individual maintains over the [company], and whether the [company] has been
used for personal purposes.”  Castleberry, 721 S.W.2d at 272 (citing Lucas
v. Tex. Indus., Inc., 696 S.W.2d 372, 374 (Tex. 1984); Gentry v. Credit
Plan Corp. of Hous., 528 S.W.2d 571, 573–75 (Tex. 1975)).  In a tort case,
usually “‘the financial strength or weakness of the [company] tortfeasor is an
important consideration’” because no injustice would result if the company
responsible for the plaintiff’s injury is capable of paying a judgment upon
proof of liability.  Stewart & Stevenson Servs., Inc. v. Serv-Tech Inc.,
879 S.W.2d 89, 110 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (quoting Lucas,
696 S.W.2d at 375).  The fact that a company is undercapitalized supports a
finding of alter ego.  See Lucas, 696 S.W.2d at 375; O’Berry v.
McDermott, Inc., 712 S.W.2d 206, 207–08 (Tex. App.—Houston [14th Dist.]
1986, writ ref’d n.r.e.).

Here, there is legally insufficient evidence that
unity existed between Watkins and any of the entities that operated The Tavern and
that injustice would result if Watkins were not held individually liable. 
Basurto provided no evidence that Watkins mingled his personal property with any
property of the companies or that Watkins used any company for personal
purposes.[15] 
The record shows that Watkins had some ownership interests in 1340 Tavern and
Tips, but the extent of ownership is not in the evidence.[16]  Watkins,
indeed, exercised extensive control over The Tavern’s operation, but mere
control is insufficient to impose liability.  See Lucas, 696 S.W.2d at
374 (“There must be something more than mere unity of financial interest,
ownership and control for a court to treat the subsidiary as the alter ego of the
parent and make the parent liable for the subsidiary’s tort.”).

Basurto argues that the entities could not have
satisfied his judgment, but he failed to present any evidence to support this
argument.  The only evidence that Basurto presented about any entity’s
financial strength or weakness was through Watkins’s testimony.  But Watkins’s
admission at trial that Tips had “good years and bad years” does not constitute
some evidence of undercapitalization or that an injustice would result if
Watkins were not held individually liable.  Viewing the evidence in the light
most favorable to Basurto and disregarding contrary evidence,[17] Basurto
introduced no evidence to show that Tips could not satisfy a judgment.[18]

Further, Basurto argued to the trial court that Watkins
failed to timely disclose Tips as the entity that employed The Tavern’s
employees, and as a result, Tips was not made a party to the litigation prior
to the running of the statute of limitations.  This argument does not support a
finding of alter ego.  The injustice that the alter ego doctrine serves to
remedy is that of a corporation’s lack of ability to pay a judgment that it
rightfully should pay.  See Stewart & Stevenson, 879 S.W.2d at 100. 
Basurto had other available avenues to obtain relief for any discovery abuses
by Watkins.  See Tex. R. Civ. P.
193.6; Tex. R. Civ. P. 215.2.

Accordingly, there is legally insufficient evidence
to support the trial court’s finding of alter ego.  Additionally, we note the trial
court’s finding that Watkins was the alter ego of his business entities does
not itself support a claim for damages—there must be a meritorious underlying
cause of action against those entities.  See Wilson v. Davis, 305 S.W.3d
57, 68 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (“Piercing the corporate
veil is not a cause of action, but is instead a means of imposing liability for
an underlying cause of action.”).  Here, the trial court’s factual findings
support only one theory of recovery: negligent hiring and supervision.  Because
we have already concluded that there is legally insufficient evidence of the causation
element of negligent hiring and supervision, there is no remaining underlying
cause of action that would support a finding of liability against Watkins even
if there were legally sufficient evidence of alter ego.  See Tex. R. Civ. P. 299 (“The judgment may
not be supported upon appeal by a presumed finding upon any ground of recovery
or defense, no element of which has been included in the findings of fact . . .
.”).

Watkins’s first issue is sustained.

Conclusion

We conclude there is legally insufficient evidence
that (1) Watkins’s negligence caused Basurto’s injuries and (2) Watkins is the
alter ego of The Tavern’s business entities.  Thus, we reverse the trial
court’s judgment and render judgment that Basurto take nothing from Watkins.

 








                                                                                    

                                                                        /s/        Sharon
McCally

                                                                                    Justice

 

 

Panel consists of Justices Anderson,
Seymore, and McCally.









[1]
Neither of these entities was a defendant at trial.  Due to Watkins’s late
disclosure of Tips as the employer of The Tavern’s staff, Basurto filed a
fourth amended petition adding Tips eleven days prior to trial.  However,
Basurto did not serve the entity, and Tips made no appearance.  Basurto sought
neither continuance nor sanction related to the late disclosure.





[2]
Grove also testified about an altercation he had sometime after the assault on
Basurto when someone scratched Grove’s car: “I didn’t hit the kid or anything. 
I just slapped him. . . . [A]ll I did was open-hand slap him.”  As a result of
the latter incident, Grove was fired.





[3]
At trial, Basurto did not question Guzman on the specifics of those
convictions.  Basurto questioned Watkins, but Watkins was not aware of Guzman’s
criminal record.  For example:

[Basurto’s Counsel]:    Do you know
Mr. Guzman has been convicted of assault causing bodily injury?

[Watkins]:                    No idea.

This exchange
shows that Watkins was not aware of whether Guzman was convicted of assault,
but it is not evidence that Guzman was actually convicted of assault.  See Brown
v. State, 477 S.W.2d 617, 620 (Tex. Crim. App. 1972) (explaining, in
context of proper form of questions to test knowledge of reputation witness,
“have you heard” and “did you know” questions are not themselves substantive
evidence of prior conduct); Kercho v. State, 948 S.W.2d 34, 37 (Tex.
App.—Houston [14th Dist.] 1997, pet. ref’d) (“Questions do not amount to
evidence.”).





[4]
See also W. Steel Co. v. Altenburg, 206 S.W.3d 121, 124 (Tex. 2006)
(citing Tex. R. App. P. 38.1(f))
(reversing the court of appeals because it evaluated the sufficiency of the
evidence for the fact that Western had worker’s compensation insurance at the
time of Altenburg’s injury; Western stated in its appellate brief that it had
insurance, and Altenburg did not specifically dispute this fact on appeal)





[5]
His issues on appeal are as follows: (1) “Was the evidence presented at trial
legally and factually sufficient to disregard the legal separateness between
Charles Watkins and either entity involved in the operation of the Tavern?” and
(2) “Was the evidence presented at trial legally and factually sufficient to
support the trial court’s finding that Basurto’s injuries were caused in part
by Charles Watkins [sic] negligence?”

Basurto does not complain of Watkins’s failure to
assign error to specific findings of fact.





[6]
Accord Mr. W. Fireworks v. Sw. Royalty Inc., No. 11-08-00168-CV, 2010 WL
3064412, at *1 (Tex. App.—Eastland Aug. 5, 2010, no pet.) (mem. op.); In re
E.C.M., No. 07-09-00242-CV, 2010 WL 2943091, at *3 (Tex. App.—Amarillo July
28, 2010, no pet.) (mem. op.).





[7]
Because we hold that there was no evidence of causation in this case, we do not
decide whether Watkins, as an LLC member who directly participated in hiring
employees, individually owed Basurto a duty to competently hire and supervise
The Tavern’s employees.  Generally, a corporate officer is liable for his or
her own negligence.  Leitch v. Hornsby, 935 S.W.2d 114, 118 (Tex.
1996).  Without piercing the corporate veil, however, a corporate officer is
only liable for the breach of a duty of care owed to third parties independent
of the business’s duty.  Id. at 117–18.  Texas law is not yet settled on
whether the agent of a corporation (or LLC) can be held individually liable for
the tort of negligent hiring or supervision—in particular, whether the agent
owes a duty to third parties to properly hire or supervise other agents of the
principal.  Compare Donaldson v. J.D. Transp. Co., No. 04-04-00607-CV,
2005 WL 1458230, at *1, *3 (Tex. App.—San Antonio June 22, 2005, no pet.) (mem.
op.) (holding that a supervisor was not individually liable for negligent hiring
of an employee because of a lack of proximate cause, but noting that “the
parties agree that [the supervisor] owed a duty to [the plaintiff], and that
[the supervisor] violated that duty by failing to strictly comply with the
federal regulations for hiring commercial truck drivers”), and Portlock
v. Perry, 852 S.W.2d 578, 582–83 (Tex. App.—Dallas 1993, writ denied)
(holding that the corporation’s president was not individually liable for
negligent hiring of an employee because of a lack of proximate cause, but
noting that the president “may have assumed a duty to hire competent
[employees] when he performed the affirmative acts of hiring [the employees]”),
with Allen v. Home Depot U.S.A., Inc., No. Civ.A.SA-04-0CA703XR,
2004 WL 2270001, at *1, *3 (W.D. Tex. Oct. 6, 2004) (citing Leitch, 935
S.W.2d 114) (holding that a store manager could not be individually liable to a
customer because the manager did not owe a legal duty to the customer to
properly supervise other employees responsible for securing a metal rod that
injured the customer).  See generally Restatement
(Third) of Agency § 701 cmt. d (2006) (“[A]n agent whose assigned
function within an organization includes the supervision of others may be
subject to liability when a failure by the agent to properly supervise breaches
a duty that the agent owes to a third party.”); Martin Petrin, The Curious
Case of Directors’ and Officers’ Liability for Supervision and Management:
Exploring the Intersection of Corporate and Tort Law, 59 Am. U. L. Rev. 1661 (2010).





[8]
Foreseeability relates to both duty and causation, and sometimes the issues
overlap.  See Zarzana, 218 S.W.3d at 158–59 (explaining that duty and
proximate cause “both hinge on a determination of foreseeability of harm,” and
holding that the employer conclusively negated duty and causation by
demonstrating a lack of foreseeability).  For purposes of this case, it may be
best understood that (1) duty is lacking when the employer will not
place an employee in a position to harm others, and (2) causation is
lacking when the employer will place the employee in a position to harm others,
but the employer would have no reason to know of the employee’s incompetency or
propensity for violence.  Compare Guidry, 944 S.W.2d at 809–11
(holding that a trucking company had no duty to ensure its employee, a
long-haul truck driver, had no history of sexual assault because the employee’s
subsequent sexual assault was not a foreseeable result of, or related to, the
employee’s job functions), with Fifth Club, Inc., v. Ramirez, 196 S.W.3d
788, 796–97 (Tex. 2006) (holding that a night club’s failure to investigate the
background of its security guard was not the proximate cause of a patron’s
injuries when the guard assaulted the patron; explaining that an investigation
would not have revealed a propensity for violence).





[9]
For example, Watkins argues there is no evidence that (1) anyone he hired had a
history of violence, (2) Watkins had actual or constructive notice of any
potential danger to persons such as Basurto, (3) Watkins had notice of any
prior violent incident at The Tavern, (4) Watkins established or knew about any
Tavern policies that promoted or condoned violence, or (5) that any policies
condoning violence existed.  Basurto responded appropriately to the most
salient issues, arguing among other points that “Watkins knew or should have
known of the fights his doormen were regularly engaged in with customers at
that time, yet he failed to discipline the doormen or instigate policies
regarding striking customers,” and “evidence was presented to the trial court
for it to find Watkins had at least constructive knowledge of his doormens’
dangerous propensities and his negligence in failing to do anything about it.”





[10]
See Tex. R. Civ. P. 299
(“[W]hen one or more elements [of a ground of recovery] have been found by the
trial court, omitted unrequested elements, when supported by evidence, will be
supplied by presumption in support of the judgment.”).





[11]
In particular, we disregard Anderson and Jugo’s testimony that Grove had never
been involved in a prior fight at The Tavern.  We also disregard Grove’s
testimony that he had not been involved in a physical altercation at The Tavern
prior to the assault of Basurto.





[12]
Basurto testified that although he did not know the names of all of the
employees at The Tavern, he could recognize them.  But he never identified Guzman,
Grove, or Jugo in the video recording, and Basurto never identified Guzman,
Grove, Jugo, or Court as one of his attackers.





[13]
In particular, we disregard Watkins’s testimony that he instructed the
employees to call police if a customer would not leave The Tavern.





[14]
Watkins does not argue that it is relevant to our analysis that 1340 Tavern and
Tips—the entities both parties acknowledge on appeal were responsible for the
operation and management of The Tavern—were not actually defendants in this
case.  Accordingly, we do not address whether an individual defendant can be
held personally liable, under an alter ego theory, for torts committed by a
non-defendant entity.





[15]
Basurto also provided no evidence that company formalities were not followed,
but we need not decide today whether the failure to follow formalities remains
a factor to be considered when piercing the veil of an LLC.  See Tex. Bus. Orgs. Code Ann. §
21.223(a)(3) (explaining that a corporate shareholder may not be held liable on
the basis of failing to follow corporate formalities); Pinebrook, 77
S.W.3d at 500–01 (holding that the failure to follow formalities was not
evidence of alter ego for an LLC).





[16]
On appeal, Basurto cites to a tax return for 1340 Tavern, which was attached as
an exhibit to a motion for summary judgment, to show that Watkins had a 51%
interest in 1340 Tavern.  This document was not an exhibit at trial, and there
was no evidence before the trial court to support Watkins’s exact ownership
interest.





[17]
In particular, we disregard Watkins’s testimony that Tips had substantial
assets in the form of money in bank accounts, liquor, and the liquor license,
and we disregard his testimony that Tips had paid roughly $250,000 in liquor
taxes one year.





[18]
Again on appeal, Basurto cites to 1340 Tavern’s tax return to show that 1340
Tavern had ordinary business income of roughly $47,000 in 2006.  This document
was not an exhibit at trial, and there was no evidence before the trial court
to support any amount of income or loss claimed for any of the entities
involved in The Tavern’s operation.  Basurto also asserts on appeal that “Tips
did not have insurance and could not satisfy a substantial judgment.”  Although
Basurto’s counsel argued in closing that Tips lacked insurance, Watkins correctly
noted in his reply brief that no evidence was introduced on this issue during
the trial.