Opinion filed February 12, 2026



In The

# Eleventh Court of Appeals

_____

## No. 11-25-00065-CV

_____

**ROBEY NEELEY, Appellant**

**V.**

**LYFT, INC.; LIBERTY MUTUAL FIRE INSURANCE COMPANY; AND LIBERTY COUNTY MUTUAL INSURANCE COMPANY, Appellees**

**On Appeal from the 244th District Court**
**Ector County, Texas**
**Trial Court Cause No. C-22-01-0036-CV**

### O P I N I O N

This case concerns a suit brought by Appellant, Robey Neeley, against Appellees, Lyft, Inc. (Lyft); Liberty Mutual Fire Insurance Company; and Liberty County Mutual Insurance Company (Liberty), alleging violations of the Texas Deceptive Trade Practices Act (DTPA), the Texas Insurance Code, breach of

contract, fraud, and conspiracy. *See* TEX. BUS. & COM. CODE ANN. §§ 17.46, 17.50 (West 2021); TEX. INS. CODE ANN. §§ 541.052, .060, .061 (West 2022).

In two issues, Neeley challenges the trial court's orders granting Lyft's and Liberty's respective motions for summary judgment as to all of his causes of action. We affirm in part and reverse and remand in part.

## I. *Factual and Procedural History*

On September 12, 2021, Neeley rear-ended a vehicle stopped at a red light, resulting in a four-vehicle collision. It is undisputed that at the time of the accident, Neeley was working for Lyft and had engaged the Lyft app on his cell phone. Neeley, however, did not have a passenger inside his vehicle, nor was he en route to pick up a passenger at the time of the accident.

After the accident, Neeley received a preliminary repair estimate of approximately $30,000 for his 2016 Ford Expedition. He submitted an insurance claim to Liberty, which had issued a personal auto policy to Neeley and was also the business auto insurance carrier for Lyft. Three insurance policies are relevant to this dispute: (1) Neeley's personal auto policy, Policy No. ABT-291-808692-45, effective February 27, 2021 to February 27, 2022; (2) a business auto *liability* policy issued to Lyft, Policy No. AS2-695-471695-080, effective October 1, 2020 to October 1, 2021; and (3) a business auto policy issued to Lyft, Policy No. AS2-695-471695-090, effective October 1, 2020 to October 1, 2021.

Importantly, Neeley's personal auto policy contained the following exclusion under the section titled, "COVERAGE FOR DAMAGE TO YOUR AUTO":

> We will not pay for . . . [l]oss to "your covered auto" or any "non-owned auto" which occurs during the period of time while it is being used by any person who is logged into a "transportation network platform" as a driver whether or not a passenger is "occupying" the vehicle.

The policy defined "[t]ransportation network platform" as "an online-enabled application or digital network used to connect passengers with drivers using vehicles

2

for the purpose of providing prearranged transportation services for compensation." The parties agree that Lyft is a transportation network company, which provided Neeley with a transportation network platform.

The business auto policy, meanwhile, included an endorsement limiting coverage to situations in which a driver is using a digital network application and:

> Has accepted a request for transportation services through [Lyft's] "Digital network application" to provide transportation services and is:
>
> > (1) En route to the requested pick up location;
> >
> > (2) Picking up or loading the passenger(s);
> >
> > (3) Traveling from the pick-up location to the destination location; or
> >
> > (4) Dropping off or unloading at the destination location.

Liberty denied Neeley's claim for collision coverage, and Neeley brought suit against Liberty. Neeley later amended his petition to add Lyft as a defendant. Liberty and Lyft each moved for summary judgment on traditional and no-evidence grounds. Neely timely amended his petition for a second (and final) time on June 14, 2024; however, neither Liberty nor Lyft amended their motion for summary judgment prior to the hearing. *See* TEX. R. CIV. P. 166a(c).

A. *Neeley's Amended Petitions*

Because they relate to the propriety of the trial court's summary-judgment orders and the claims before us in this appeal, we summarize both of Neeley's amended petitions.

In sum, in both amended petitions, Neeley alleged claims for breach of contract, violations of Chapter 541 of the Insurance Code, and violations of the DTPA against Liberty, and a fraud claim against Liberty and Lyft that alluded to, then expressly alleged, a conspiracy between the two. In his second amended petition, Neeley added DTPA claims against Lyft.

3

More specifically, in both amended petitions, Neeley asserted a breach-of-contract claim against Liberty.

In his first amended petition, Neeley alleged that Liberty "violated [Chapter] 541 of the Insurance Code as a tie-in statute by acting in bad faith and engaging in unfair settlement practices." In his second amended petition, Neeley refined this claim, alleging that Liberty violated Sections 541.052, 541.060(a), and 541.061 of the Insurance Code by (1) failing to settle the claim when liability was reasonably clear, (2) failing to fully disclose policy provisions, and (3) making material misrepresentations. *See* INS. §§ 541.052, .060, .061.

Neeley's first amended petition also asserted a DTPA claim against Liberty. In his second amended petition, he expanded the DTPA allegation to assert violations under Sections 17.46(b)(12) and 17.50(a)(1), (3), and (4) against both Liberty and Lyft.[1] *See* BUS. & COM. §§ 17.46 (12), 17.50(a)(1), (3), (4).

Neeley further alleged in both his first and second amended petitions that Lyft and Liberty made false representations regarding the availability of commercial coverage when the Lyft app was engaged and, in his second amended petition, alleged that Lyft failed to disclose that he "actually had to have a rider in the vehicle to be covered" under the commercial policy while working for Lyft. Neeley asserted that Lyft and Liberty "owed [him] a duty to explain the details of the coverages to him," particularly given the alleged coverage gap, but had instead made "intentionally vague and misleading" representations.

Though not an independent cause of action, Neeley referenced a conspiracy in his first amended petition, and expressly alleged in his second amended petition that Liberty and Lyft "acted in concert through a fraudulent scheme to conceal and

---

[1]Neeley expanded the DTPA claim to include Section 17.46(b)(12) but dropped alleged violation of Section 17.46(b)(6), (20), and (22). Regarding Section 17.50, Neeley expanded his claim from merely stating "17.50" in his first amended petition to specifying the subsections asserted: 17.50(a)(1), (3), and (4).

misrepresent the policy coverages." *See Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019) ("[C]ivil conspiracy is not an independent tort.").

### B. *Liberty's Motion for Summary Judgment*

On March 11, 2024, Liberty filed a combined no-evidence and traditional motion for summary judgment. Liberty argued that Neeley's breach-of-contract claim failed as there was no breach on Liberty's part for denying Neeley's coverage claim. Liberty asserted that Neeley's personal auto policy excluded coverage while Neeley was logged into "'transportation network platform' as a driver[,] whether or not a passenger is 'occupying' the vehicle"—an exclusion Neeley conceded applied. Liberty further asserted that Neeley was precluded from seeking coverage under the business auto policy because that policy required that Neeley be logged into the "Digital network application" *and* have "accepted a request for transportation service" through the application. Though Neeley was logged onto the app, he had not accepted a request for transportation service at the time of the accident. And by its terms, the business auto policy did not cover instances where the app was in use but the driver had not yet accepted a request for service. Additionally, Liberty argued that the business auto liability policy did not provide collision coverage at all.

Addressing Neeley's DTPA and insurance claims jointly, Liberty contended that an insured cannot generally recover policy benefits as actual damages for an insurer's statutory violation when an insured had no right to those benefits under the policy. Liberty argued that while an insured may recover damages for a statutory violation where the injury is independent from the loss of benefits, Neeley's stated damages—property damage to his vehicle and inability to continue to drive for Lyft—flow from the denial of the claim for policy benefits, and that, therefore, the independent injury rule did not apply. Accordingly, Liberty argued, "in the absence

5

of an alleged injury independent of the denial of Policy benefits, [Neeley's] bad faith claims under the Texas DTPA and Chapter 541 of the Texas Insurance Code fail as a matter of law."

To Neeley's fraud claim, Liberty contended that Neeley had failed to provide evidence of any element of fraud, namely: "who (1) 'made a material representation,' (2) the 'fals[ity]' of the statement, (3) whether 'the speaker either knew it was false or asserted it without knowledge of its truth,' or (4) whether 'the speaker intended that it be acted upon.'"

C.  *Lyft's Motion for Summary Judgment*

On March 28, 2024, Lyft filed a combined no-evidence and traditional motion for summary judgment challenging Neeley's fraud claim based on Lyft's alleged fraudulent representations—the only cause of action against Lyft at that time.  Lyft argued that the allegedly offending "Lyft Help" article from its website relied upon by Neeley was, in fact, truthful:

> This article warns drivers that "[t]he subject of insurance can be complicated, but it's important you know how and when our policies cover you and your passengers in the event of an Incident."  Then, under the bold heading, "**Coverage when the app is on, waiting for a ride request**," the article provides:
>> . . . .
>
>> Lyft provides third-party liability insurance for covered accidents if your personal insurance does not apply.
>>
>> - $50,000/person for bodily injury
>> - $100,000/accident for bodily injury
>> - $25,000/accident for property damage
>> . . . .
>
> Only under the next bold heading, "**Coverage when the app is on**, *picking up passengers or during rides,*" does the article provide:
>> . . . .

> Lyft provides the following insurance for covered accidents:
>
> - $1,000,000 for 3rd-party auto liability
> - Uninsured/underinsured motorist bodily injury and/or first-party coverage
> - Contingent comprehensive & collision up to the actual cash value of the car ($2,500 deductible).
>
> Clearly, only when a driver is en route to a passenger, or has a passenger in the vehicle, is contingent and collision coverage provided.

Lyft therefore maintained that Neeley had no evidence of a material, false representation by Lyft.

D. *Neeley's Response*

In response to the parties' motions for summary judgment, Neeley argued that the parties failed to address his separate causes of action under Sections 541.061 and 541.052 of the Insurance Code. *See* INS. §§ 541.052, .061. Neeley also argued that his DTPA cause of action "based on the failure to disclose material information that would have prevented [him] from entering into the commercial policy agreement" similarly went unaddressed. Neeley argued that Liberty, as the insurer for both the personal and commercial policy at-issue, had "awareness of the potential gap in coverage the two policies provide when the [driving] app is on but no ride is engaged." Therefore, Neeley surmised, Liberty's "failure to disclose the existence of the gap in coverage to their customer and the failure to ensure that the materials online which represent the nature of the coverage their policy provides to insureds is transparent violates the requirements of the Texas Insurance Code and DTPA which require full disclosure of material information."

On his fraud claim, Neeley asserted that the only information he received from either party related to the commercial policy coverage came from Lyft's website, which he maintained does "not provide notice to the insured or regular individuals

with notice of existence of the gap to collision/comprehensive insurance coverage when the App is on but no ride has been set up." Neeley further argued that Liberty's and Lyft's insistence that they made no representations to him supports his allegation that the parties failed to disclose important information in violation of the insurance code and DTPA. In other words, according to Neeley, the absence of evidence of representations, while negating a fraud claim for misrepresentation, would prevent summary judgment on the insurance and DTPA claims based on a failure to disclose.

In an attached affidavit, Neeley stated that it had been his understanding that the commercial policy would provide him collision coverage whenever he had the Lyft app engaged. Neeley maintained that the online materials provided by Lyft led him to believe that the commercial policy provided coverage "to the same extent [his] comprehensive coverage on [his] personal policy would apply if [he] was not driving for Lyft." Neeley averred that, had he known of the alleged coverage gap, he "would have either amended [his] personal policy to include coverage during the use of ride-share applications or [he] would have purchased an alternative commercial policy that provided comprehensive coverage at all times." Neeley claimed he received no additional information beyond what was contained in the Lyft app at the time he applied to work for Lyft.

Both motions for summary judgment were granted by written order. This appeal followed.

## II. *Standard of Review*

We review the trial court's grant of summary judgment de novo. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)). When the trial court's order fails to specify the grounds for its summary judgment, we will affirm if any of the grounds on which judgment is sought are meritorious. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013); *Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex.

8

2005) (If the trial court does not specify the grounds for its summary-judgment order, "we may affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious."). We may only consider as grounds for reversal issues that were "expressly presented to the trial court by written motion, answer[,] or other response." TEX. R. CIV. P. 166a(c). Generally, if a party moves for summary judgment on both traditional and no-evidence grounds, we first consider the no-evidence motion. *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017).

After an adequate time for discovery, a party may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. TEX. R. CIV. P. 166a(i). We review a no-evidence motion for summary judgment under the same legal sufficiency standard as a directed verdict. *Merriman*, 407 S.W.3d at 248. Under this standard, the nonmovant has the burden to produce more than a scintilla of evidence to support each challenged element of its claims. *Id.* Evidence is no more than a scintilla if it is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)). Additionally, Rule 166a(i) requires that no-evidence motions for summary judgment "state the elements as to which there is no evidence." TEX. R. CIV. P. 166a(i). The comments to Rule 166a(i) state that "[t]he motion must be specific in challenging the evidentiary support for an element of a claim or defense" and that "paragraph (i) does not authorize conclusory motions or general no-evidence challenges to an opponent's case." *Id.* cmt.

A party moving for traditional summary judgment bears the burden of proving that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nassar v. Liberty Mut. Fire Ins. Co.*, 508

S.W.3d 254, 257 (Tex. 2017). To be entitled to a traditional summary judgment, a defendant must conclusively negate at least one essential element of the cause of action being asserted or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). "Evidence is conclusive only if reasonable people could not differ in their conclusions." *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). If the movant initially establishes a right to summary judgment on the issues expressly presented in the motion, then the burden shifts to the nonmovant to present to the trial court any issues or evidence that would preclude summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979).

We address the parties' summary judgment motions on Neeley's four causes of action in turn: breach of contract, fraud, violations of the Texas Insurance Code, and DTPA violations.

### III. *Breach of Contract Against Liberty*

At the outset, we note that Neeley asserts that he did not plead a breach-of-contract claim. As such. Neeley's appellate brief contains no discussion of his breach-of-contract claim apart from a single sentence asserting that he "did not sue in contract." This position is at odds with his live petition, which states: "[Neeley] brings this suit against [Liberty] . . . for [the] Enforcement of a Contract and Breach of Contract under Ch[apter] 38 [of the Civil Practice and Remedies Code]." His summary judgment response was similarly explicit:

> [Neeley] has filed suit against [Appellees] under a number of theories including conspiracy of both parties to conceal extent, nature and limitation of coverage, DTPA Violations, Section 541 of the Texas Insurance Code violations, fraud, as well as *enforcement of contract and breach of contract under CPRC 38* related to the property damage claim that has been denied.

(Emphasis added).

10

"An insured's claim for breach of an insurance contract is 'distinct' and 'independent' from claims that the insurer violated its extra-contractual common-law and statutory duties." *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 489 (Tex. 2018) (collecting cases). "A claim for breach of the policy is a 'contract cause of action,'" whereas common-law or statutory bad-faith claims "sound[] in tort." *Id.* "[T]he claims are often 'largely interwoven,' and the same evidence is often 'admissible on both claims.'" *Id.* (quoting *Liberty Nat. Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 630 (Tex. 1996)).

Relevant here, Chapter 38 of the Texas Civil Practice and Remedies Code, as invoked by Neeley in his live petition and summary judgment response, authorizes the recovery of reasonable attorney's fees when the claim is for a breach of contract. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (West Supp. 2025); *see Sprague v. Roberts*, No. 11-23-00213-CV, 2025 WL 336964, at *5 (Tex. App.—Eastland Jan. 30, 2025, no pet.) (mem. op.) (observing that "[i]f a claim for breach of contract is asserted, a trial court may award reasonable attorney's fees to the prevailing party" under Section 38.001(b)). It is therefore unclear then how Neeley "did not sue in contract." A breach-of-contract claim requires proof of four elements: (1) a valid contract; (2) the plaintiff's performance; (3) the defendant's breach; and (4) damages resulting from the breach. *Menchaca*, 545 S.W.3d at 501 n.21. Liberty sought summary judgment on the basis that its denial of benefits under both the personal and commercial auto policies was not a breach of contract because: (1) there was no evidence that Neeley's property damage claim was covered under either policy, and (2) there "is simply no coverage for [Neeley's] property damage claim as a matter of law."

Neeley's personal auto policy contains an exclusion prohibiting coverage when the covered vehicle is driven by an individual "logged into a 'transportation network platform' as a driver whether or not a passenger is 'occupying' the vehicle."

11

The business auto collision policy, in turn, limits collision coverage to when a driver is logged into the network *and* "[h]as accepted a request for transportation services" *and* is either (1) en route to the pick-up location; (2) picking up or loading passengers; (3) transporting passengers to the destination location; or (4) dropping off or unloading passengers at the destination location. Neeley does not dispute that Lyft's app is a "transportation network platform," that he was logged into the app, and that he had *not* accepted a ride request at the time of the accident. Perhaps more significantly, Neeley has never disputed the applicability of either policy exclusion, and Neeley unequivocally conceded during oral argument that coverage does not exist under the terms of either insurance policy for his collision claim. *Cf. Merriman*, 407 S.W.3d at 248 (providing that in a no-evidence motion for summary judgment, a nonmovant has the burden to produce more than a scintilla of evidence to support each challenged element of its claim).

Having found no evidence of a breach by Liberty under either policy, we conclude the trial court did not err in granting Liberty's no evidence motion for summary judgment on this claim. *See id.*

## IV. *Insurance Code Claims Against Liberty*

Assuming, but not deciding, that Neeley's appellate issue on his Insurance Code cause of action was not waived due to inadequate briefing,[2] we examine Liberty's summary judgment motion on Neeley's Insurance Code claims.

### A. *Applicable Law*

Section 541.060 creates an actionable claim, in relevant part, when an insurer "fail[s] to attempt in good faith to effectuate a prompt, fair, and equitable settlement

---

[2]Despite Neeley's live petition alleging a cause of action under Sections 541.052, 541.060, and 541.061 of the Insurance Code, there is no discussion or reference to Sections 541.052 or 541.060 in his brief, and the only mention of Section 541.061 is one line: "The insurance company is liable for any misrepresentation of the policy. Tex. Ins. Code section 541.061." *See* TEX. R. APP. P. 38.1.

of . . . a claim with respect to which the insurer's liability has become reasonably clear." INS. § 541.060(a)(2)(A).

Sections 541.052 and 541.061 make misrepresentations by an insurer, directly or through false advertising, actionable. *Id.* §§ 541.052, .061.

Section 541.052 provides, in relevant part:

> It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to make, publish, disseminate, circulate, or place before the public or directly or indirectly cause to be made, published, disseminated, circulated, or placed before the public an advertisement, announcement, or statement containing an untrue, deceptive, or misleading assertion, representation, or statement regarding the business of insurance or a person in the conduct of the person's insurance business.

*Id.* § 541.052. Meanwhile, Section 541.061 provides that:

> It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to misrepresent an insurance policy by:
>
> (1) making an untrue statement of material fact;
>
> (2) failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made;
>
> (3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact;
>
> (4) making a material misstatement of law; or
>
> (5) failing to disclose a matter required by law to be disclosed, including failing to make a disclosure in accordance with another provision of this code.

*Id.* § 541.061.

13

B. *Liberty's Motion for Summary Judgment*

In Liberty's motion for summary judgment, it did not identify or address the elements of Neeley's claims under Chapter 541 of the Insurance Code.[3] "[A] motion for no-evidence summary judgment that only generally attacks a factual theory, without specifying the elements of the claims being attacked, is insufficient to support a no-evidence summary judgment." *Garcia v. State Farm Lloyds*, 287 S.W.3d 809, 819 (Tex. App.—Corpus Christi–Edinburg 2009, pet. denied); *see* TEX. R. CIV. P. 166a(i) (requiring that no-evidence motions for summary judgment "state the elements as to which there is no evidence"). Accordingly, Liberty's no-evidence motion fails, and we proceed with a review of Liberty's traditional motion on this cause of action. *See Merriman*, 407 S.W.3d at 248.

As to its traditional summary judgment motion, Liberty was required to conclusively negate at least one essential element of each statutory claim in Neeley's live petition. *See Sci. Spectrum, Inc.*, 941 S.W.2d at 911. To this end, Liberty uniformly challenged the damages element, arguing that Neeley is barred from recovering any damages under the Insurance Code because (1) he had no right to those benefits under the policies at issue, and (2) the "independent injury rule" does not apply. *See Prime Time Family Ent. Ctr., Inc. v. Axis Ins. Co.*, 630 S.W.3d 226, 233 (Tex. App.—Eastland 2020, no pet.).

Chapter 541 authorizes recovery under the Insurance Code only where a person "*sustains actual damages*" caused by (1) a defendant's unfair or deceptive insurance practices or (2) a defendant's unlawful deceptive trade practice. INS. § 541.151. Actual damages are therefore an essential element of an insurance code

---

[3]Neeley had only alleged violations of Chapter 541 generally when Liberty filed its summary judgment. However, under the fraud portion of their motion, Liberty maintained that there existed no evidence of any misrepresentation or a false statement or the elements being attacked under Sections 541.052 and 541.061.

14

claim. *See Menchaca*, 545 S.W.3d at 479 (establishing that damages are an essential element of an Insurance Code cause of action).

In *Menchaca*, the Texas Supreme Court identified two distinct pathways for proving damages in an insurance code suit. *Id.* at 489. Under the first pathway, insureds who establish a contractual right to policy benefits can recover those benefits as actual damages if the insurer's statutory violation caused the loss of benefits. *Id.* Under the second pathway, insureds may recover damages for injuries that are truly independent of their right to policy benefits, even if the policy does not entitle them to receive benefits. *Id.* Critically, the court emphasized that there is no alternative to these two pathways, stating that insureds "cannot recover *any* damages based on an insurer's statutory violation if the insured had no right to receive benefits under the policy and sustained no injury independent of a right to benefits." *Id.* at 489.

As discussed above, Liberty has conclusively established that Neeley had no right to receive collision coverage benefits under either policy. We must then consider whether Neeley pleaded damages for injuries independent of any policy benefits. Neeley pleaded:

> As a result of the accident above described, Plaintiff suffered the loss of his vehicle and loss of earnings, all in the past, and in reasonable probability, will continue to suffer same in the future by reason of the continuing breach of the policies by both Defendants. Plaintiff incurred damages to his vehicle at least in the amount of $30,000, plus loss of use of the vehicle, costs of a replacement vehicle and loss of credit standing and incidental damages by having the note fall into default.

As alleged, these are damages that might accrue from losses under a collision policy—not a liability policy. All of Neeley's claimed damages flow directly from the alleged loss of policy benefits.

Thus, Liberty has conclusively negated an essential element of Neeley's Insurance Code claims. *See Sci. Spectrum, Inc.*, 941 S.W.2d at 911; *see, e.g.,*

*Aleman v. Standard Cas. Co.*, No. 01-23-00572-CV, 2025 WL 2445991, at \*18 (Tex. App.—Houston [1st Dist.] Aug. 26, 2025, no pet.) (mem. op.) ("Because we have held that Aleman is unable to show coverage for her claim related to the property as a matter of law, and thus cannot establish a breach of contract, she is also unable to maintain her extra-contractual claims for violations of the Texas Insurance Code."). The trial court did not err in granting Liberty's traditional summary judgment motion on these claims. *See Clear Creek Basin Auth.*, 589 S.W.2d at 678–79.

### V. *Fraud Against Lyft and Liberty*

We next address Neeley's fraud claims. Once again, we have a variance between what Neeley pleaded, what he argued in response to the motions for summary judgment, and what he asserts now on appeal. In his live petition, Neeley alleged that "both Lyft and Liberty Mutual owed [him] a duty to explain the details of the coverages to him, especially where there was a gap in coverage to [his] detriment," and that they acted fraudulently in intentionally failing to disclose this coverage gap. Neeley further alleged that the parties made fraudulent misrepresentations on which he relied on to his detriment. The petition does not identify the legal basis on which the alleged duty to disclose was owed.

Neeley argued similarly in his summary-judgment response, adding that "Lyft[,] as the provider and facilitator of the insurance policy[,] has created excessively vague and confusing language [on its website] in its description of the coverage" provided to its drivers.

On appeal, however, Neeley introduces fraud by nondisclosure under Section 1954.101 and argues that the Appellees committed fraud by failing to disclose the coverage gap between two policies in violation of that statute *See* INS. § 1954.101.

16

A.  *Applicable Law*

To prove common law fraud, a plaintiff must establish (1) a material representation was made; (2) the representation was false; (3) the speaker knew the representation was false or made the representation recklessly without any knowledge of its truth; (4) the speaker intended the other party to rely on the representation; (5) the party acted in reliance on the representation; and (6) injury resulted.  *Nooner Holdings, Ltd. v. Abilene Vill., LLC*, 668 S.W.3d 956, 963 (Tex. App.—Eastland 2023, pet. denied) (citing *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011)).  Failing to disclose information is equivalent to a false representation when particular circumstances impose a duty on a party to speak, and the party deliberately remains silent.  *In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 678 (Tex. 2009) (orig. proceeding) (per curiam) (citing *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001)).  "As a general rule, a failure to disclose information does not constitute fraud unless there is a duty to disclose the information."  *Bradford*, 48 S.W.3d at 755.  "Whether such a duty exists is a question of law."  *Id.*

Section 1954.101 of the Insurance Code requires a transportation network company to "disclose in writing":

> (1) the insurance policy, including the types of coverage and the limits for the policy, that the company provides while a driver uses a personal vehicle in connection with the company's digital network; and

> (2) that the driver's personal automobile insurance policy may not provide coverage, depending on the policy's terms, while the driver is logged on to the company's digital network and is available to receive transportation requests or is engaged in a prearranged ride.

INS. § 1954.101.

17

B. *Lyft's Motion for Summary Judgment*

Lyft moved for summary judgment on both no-evidence and traditional grounds, arguing that there was no evidence of any actionable misrepresentation and that the only representation made by Lyft had been true. Lyft asserted that, consistent with statutory requirements and its own disclosures, it had procured a commercial insurance policy from Liberty for Neeley. *See* INS. §§ 1954.052, (requiring a transportation network company to provide a driver who has logged on to the network app but has "not engaged in a prearranged ride" with liability coverage, uninsured or underinsured motorist coverage where required elsewhere, and personal injury protection coverage where required elsewhere), .053 (insurance requirements during prearranged rides).

In his response to Lyft's motion, as evidence of a misrepresentation, Neeley attached his affidavit and a printout from Lyft's website.

1. *Material Misrepresentation*

Neeley's affidavit states that he relied on information "contained in the app at the time of [his] application"[4] and on Lyft's website, which he interpreted to mean that the commercial policy by Liberty would provide him with collision coverage whenever the app was engaged. Below is the excerpt from Lyft's webpage printout:

---

[4]He did not elaborate on what was "contained in the app."

# Insurance coverage while driving with Lyft

*If you're looking for insurance coverage with Lyft Deliveries, learn more here.*

The subject of insurance can be complicated, but it's important you know how and when our policies cover you and your passengers in the event of an incident. The following is an overview of how our insurance policies work.

**Note:** Only one policy applies when the driver is engaged in either Rideshare or Lyft Deliveries Services. Rideshare and Lyft Deliveries insurance coverage are not stackable.

**Skip to:**

- View Lyft's certificate of insurance in the app
- Coverage when:
    - App is off
    - App is on, waiting for a ride request
    - App is on, picking up passengers or during rides
- When do these coverages apply?

. . . .

## Coverage when the app is off

Your personal auto insurance coverage applies.

Back to top

## Coverage when the app is on, waiting for a ride request

Lyft provides third-party liability insurance for covered accidents if your personal insurance does not apply.

- $50,000/person for bodily injury
- $100,000/accident for bodily injury
- $25,000/accident for property damage

*1 Policies may be modified to comply with state or city insurance requirements.*

Back to top

## Coverage when the app is on, picking up passengers or during rides

Lyft provides the following insurance for covered accidents:

- $1,000,000 for 3rd-party auto liability
- Uninsured/underinsured motorist bodily injury and/or first-party coverage
- Contingent comprehensive & collision up to the actual cash value of the car ($2,500 deductible)

. . . .

19

**When do these coverages apply?**

It depends on the coverage. During the time the Lyft Driver app is on and available to accept a request (also known as "driver mode"), only the primary liability policy is in effect.

All three coverages are in effect beginning when you've accepted a passenger ride request and are on your way to pick up the passenger. These coverages continue while you're giving a ride to a passenger until the time you end the ride in the app.

Back to top

Neeley argues that the phrase, "Coverage when the app is on, picking up passengers or during rides" constitutes a "list," such that that coverage applies under any one of the three stated circumstances, i.e., when the "app is on," when passengers are being picked up, or "during rides." He maintains that a reasonably prudent person could interpret this language to extend collision coverage to any period in which the app is on, and that he relied on this reasonable interpretation to his detriment.

This webpage is not a contract in and of itself. Further, Neeley's interpretation of this document ignores the basic principles governing policy interpretation. *See Nassar*, 508 S.W.3d at 257 ("We have consistently instructed that Texas courts are to construe insurance policies 'using ordinary rules of contract interpretation.'" (quoting *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 831 (Tex. 2009))). "No one phrase, sentence, or section [of a policy] should be isolated from its setting and considered apart from the other provisions." *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994) (quoting *Guardian Trust Co. v. Bauereisen*, 121 S.W.2d 579, 583 (1938)). We must "give words and phrases their ordinary and generally accepted meaning, reading them in context and in light of the rules of grammar and common usage." *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015).

The printout provided by Neeley as evidence of fraud identifies three distinct coverage periods: (1) when the app is off, (2) when the app is on and a driver is

20

waiting for a ride request, and (3) when the app is on and a driver is picking up a passenger or during the ride. The printout also makes clear that no commercial coverage is available when the app is off; limited liability is available when the app is on and the driver is waiting for a ride request; and uninsured/underinsured motorist and collision coverage applies only when the app is on and a driver is picking up a passenger or during the ride. Interpreting collision coverage as occurring "when the app is on," "picking up passengers," or "during rides" as a list of conditions to be applied in the alternative would render the "when the app is on" a superfluous condition. Moreover, the section titled, "When do these coverages apply" confirms that all three coverages—liability, uninsured/underinsured motorist, and collision—only apply once a ride request is accepted, not simply when the app is on. While Neeley asserts in his affidavit that it was his understanding based on a reading of this document that collision coverage would apply, the webpage is not the contract. Further, language is not simply ambiguous because a party offers a conflicting interpretation. *Id.* As a matter of law, this printout is unambiguous and Neeley's interpretation is unreasonable.

There being no other evidence of a false representation by Lyft, the trial court did not err in granting summary judgment on Neeley's fraud by material misrepresentation claim against Lyft. *See Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015). We overrule Neeley's first issue in part.

2. *Failure to Disclose*

Turning to Neeley's fraud claim that was premised on an alleged failure to disclose under Section 1954.101 of the Insurance Code, Lyft argues on appeal that this specific theory was not pled or presented to the trial court, and therefore it is waived. Alternatively, Lyft argues that it made adequate disclosures by providing the Liberty policies to Neeley.

21

Rule 166a of the Texas Rules of Civil Procedure governs summary-judgment procedure. TEX. R. CIV. P. 166a; *Samson Expl., LLC v. T.S. Reed Props., Inc.*, 521 S.W.3d 766, 782 (Tex. 2017). As we have said, Rule 166a(c) provides that "[i]ssues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." TEX. R. CIV. P. 166a(c); *see Clear Creek Basin Auth.*, 589 S.W.2d at 678 ("[T]he non-movant may not urge on appeal as reason for reversal of the summary judgment any and every *new* ground that he can think of."). Reviewing courts cannot reverse a summary judgment on grounds not presented to the trial court. *Bertucci v. Watkins*, 709 S.W.3d 534, 545 (Tex. 2025). Therefore, we do not address Neeley's fraud claim premised on an alleged failure to disclose under Section 1954.101 of the Insurance Code.

Although Neeley is precluded from advancing the unpleaded theory above, Neeley did plead a generalized failure-to-disclose fraud claim in his live petition, which Lyft did not address in its motion for summary judgment. *See Bradford*, 48 S.W.3d at 755. A summary judgment motion "must stand or fall on the grounds expressly presented in the motion." *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993); *Smith v. Killion*, No. 11-11-00083-CV, 2013 WL 1859336, at *5 (Tex. App.—Eastland Apr. 30, 2013, no pet.) (mem. op.) ("In those cases where a motion for summary judgment was filed in which specific grounds were asserted, summary judgment cannot be upheld on grounds that were not asserted in the motion, even though the evidence supports the unasserted grounds."). Because Lyft did not challenge this pleaded cause of action in Neeley's live petition, the trial court erred in granting summary judgment on this claim. We sustain Neeley's first issue in part.

C. *Liberty's Motion for Summary Judgment*

Liberty similarly moved for summary judgment on the basis that there is no evidence of any element of fraud by misrepresentation. Although Neeley argued in

response that Liberty failed "to correct or clarify Lyft's disclosures of the coverage provided by the commercial policy" and "did nothing to disclose the gap or issue notice to [Neeley] about the existence of the gap," he conceded that "there were no direct disclosures to him" from Liberty. A review of the summary judgment record confirms this. There is no evidence of *any* disclosure made by Liberty to Neeley, much less one of misrepresentation. Thus, Neeley's fraud by misrepresentation claim cannot survive Liberty's no-evidence motion for summary judgment. *See Merriman*, 407 S.W.3d at 248.

Neeley pointed out in his summary-judgment response that Liberty's motion for summary judgment "overlook the claims . . . regarding the failure to disclose information about the policies provided . . . and the potential for a gap in coverage" as set out in Neeley's live petition. However, in Liberty's motion for summary judgment, it addressed Neeley's allegation of fraud and argued that Neeley had produced no evidence of a material representation that was false, known by Liberty to be false and made with intent that it be acted upon. Liberty further pointed out that Neeley had not even alleged a false statement made by Liberty—rather than Lyft—had made the objected to representations. Liberty further contested Neeley's fraud allegation, which globally stated that Liberty created a condition where premiums were received on both Liberty policies to cover Neeley's vehicle but that "their actions have created a hole in coverage."

However spun by Neeley, the basis of his pleading appears to be some alleged ambiguity in the policy wording, that, without more, Neeley alleged was "intentionally vague and misleading" and that was "fraudulent." As pleaded, Neeley's claims regarding a failure to disclose are general and mirror those that made the basis of his other causes of action—two policies that, without an added endorsement, did not cover him at all times during which his Lyft app was on. Under the subtitle of "<u>FRAUD</u>," Neeley pled:

23

> [T]he representations made were made [in] such a way as to be intentionally vague and misleading. These misrepresentations were fraudulent and such misrepresenting concerning coverage were relied upon by [Neeley] to his detriment.
>
> . . . .
>
> The misrepresentation did not disclose anywhere that [Neeley] actually had to have a rider in the vehicle to be covered while in the act of working for Lyft. . . . But Liberty Mutual never disclosed that there must be a rider in the vehicle to be covered under the commercial policy. These policy coverages were concealed and the coverages misrepresented to [Neeley] at the time of his application for employment.

Neeley acknowledges that, as written, there is no coverage for his property damage claim under either of the policies issued by Liberty. Neeley admitted multiple times in oral argument and does so in his brief that Liberty made no extra-contractual representations to him. Neeley asserted that the only information he received from either party that related to the commercial policy coverage came from Lyft's website. And contrary to his amended pleading, Neeley has asserted that he received no additional information beyond what was contained in the Lyft app at the time he applied to work for Lyft. Accordingly, Liberty made no representations "at the time of [his] application" for employment or any other time, other than the written insurance policy terms themselves, which we find are not ambiguous.

Although a trial court generally commits reversible error if it grants summary judgment on claims not addressed in the summary judgment motion. *See G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011). That general rule is subject to the following three limited exceptions:

1. the amended petition essentially reiterates previously pleaded causes of action,

24

2. when the movant has conclusively proved or disproved a matter (usually corresponding to a claim's element or to an affirmative defense) that would also preclude the unaddressed claim as a matter of law, or

3. when the unaddressed claim is derivative of the addressed claim, and the movant proved its entitlement to summary judgment on that addressed claim.

*Id.*; *Coterill–Jenkins v. Tex. Med. Ass'n Health Care Liab. Claim Trust*, 383 S.W.3d 581, 592 (Tex. App.—Houston [14th Dist.] 2012, pet. denied); *E & E Serv. & Supply, Inc. v. Ruddick*, No. 11-14-00055-CV, 2016 WL 3941079, at *3 (Tex. App.—Eastland July 14, 2016, no pet.) (mem. op.). If one of these exceptions is met, the trial court's error is harmless under Rule 44.1(a) of the Texas Rules of Appellate Procedure. *See Magee*, 347 S.W.3d at 297–98. We have previously acknowledged that these exceptions may apply in circumstances "when the summary judgment movant fails to amend its motion after the nonmovant amends its petition." *Ruddick*, 2016 WL 3941079, at *3 (citing *Coterill–Jenkins*, 383 S.W.3d at 592).

Here, Liberty conclusively proved that the insurance provisions at issue were not ambiguous—which would also preclude the alleged unaddressed allegations made in the amended petition of Neeley's failure-to-disclose fraud claim. While cast as an additional cause of action, Neeley's second amended petition essentially reiterated the same facts and the bases thereof—two policies that Neeley *thought* provided collision coverage whenever he had his Lyft app on—due to his misreading of an article on Lyft's website.

With Liberty's written policy having no ambiguity as written, in light of the fact that Liberty made no extra-contractual representations, and without authority establishing a relevant duty upon Liberty, we do not see how Neeley's cause of action for Liberty's alleged failure to disclose as pleaded and any relevant duty thereunder would exist. In his live pleading, Neeley pleaded that "both Lyft and [Liberty] *owed* [*Neeley*] *a duty* to explain the details of the coverages to him, especially where there was a gap in coverage to [Neeley's] detriment. (Emphasis

25

added). Further, when asked by this court in oral argument, Neeley could offer no authority establishing such a duty.

Whether there exists a duty to disclose is a question of law. *Bradford*, 48 S.W.3d at 755; *Nooner Holdings*, 668 S.W.3d at 964; *Env't Proc., Inc. v. Guidry*, 282 S.W.3d 602, 627 (Tex. App.—Houston [14th Dist.] 2009, pet. denied); *Ralston Purina Co. v. McKendrick*, 850 S.W.2d 629, 633 (Tex. App.—San Antonio 1993, writ denied). The inaction Neeley claims constituted a failure to "disclose" on the part of Liberty is actually only Liberty's "failure" to *explain* the policy. An insurance company agent generally has no duty to explain policy terms to an insured. *Hudspeth v. Enter. Life Ins. Co.*, 358 S.W.3d 373, 391 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Vela v. Catlin Specialty Ins. Co.*, No. 13-13-00475-CV, 2015 WL 1743455, at *11 (Tex. App.—Corpus Christi–Edinburg Apr. 16, 2015, pet. denied) (mem. op.) ("[C]ourts have held that an insurance agent does not have a legal duty to explain the terms and conditions of an insurance policy."); *Ruiz v. Gov't Emps. Ins. Co.*, 4 S.W.3d 838, 841 (Tex. App.—El Paso 1999, no pet.); *Garrison Contractors, Inc. v. Liberty Mut. Ins. Co.*, 927 S.W.2d 296, 300 (Tex. App.—El Paso 1996), *aff'd*, 966 S.W.2d 482 (Tex. 1998); *Amarco Petroleum, Inc. v. Tex. Pac. Indem. Co.*, 889 S.W.2d 695, 699 (Tex. App.—Houston [14th Dist.] 1994, writ denied); *Heritage Manor of Blaylock Props., Inc. v. Petersson*, 677 S.W.2d 689, 691 (Tex. App.—Dallas 1984, writ ref'd n.r.e.); *see N. Am. Shipbuilding, Inc. v. S. Marine & Aviation Underwriting, Inc.*, 930 S.W.2d 829, 836 (Tex. App.—Houston [1st Dist.] 1996, no writ); *Riggs v. Sentry Ins.*, 821 S.W.2d 701, 705 (Tex. App.—Houston [14th Dist.] 1991, writ denied). Instead, an insured has a duty to read the policy, and is charged with knowledge of the policy terms and conditions. *Ins. Network of Tex. v. Kloesel*, 266 S.W.3d 456, 475–76 (Tex. App.—Corpus Christi–Edinburg 2008, pet. denied) ("Texas courts have held that the insured is under a positive duty to read his policy and is presumed to have done so."); *Ruiz*, 4 S.W.3d

at 841; *Amarco Petroleum, Inc.*, 889 S.W.2d at 699; *Heritage Manor of Blaylock Props., Inc.*, 677 S.W.2d at 691.

Accordingly, when Liberty successfully contested the element of fraud or misrepresentation as to Neeley's other causes of action, it also precluded the alleged unaddressed claim of nondisclosure. *See Coterill–Jenkins*, 383 S.W.3d at 592; *see also Taylor v. TMJ Implants, Inc.*, No. 14-97-01194-CV, 1999 WL 351673, *7–8 (Tex. App.—Houston [14th Dist.] June 3, 1999, pet. denied) (not designated for publication) (original summary judgment evidence negated at least one essential element of new petition cause of action). Any error in the trial court's summary-judgment order as to Liberty on Neeley's latter-pled failure-to-disclose fraud claim is harmless under Rule 44.1(a) of the Texas Rules of Appellate Procedure. *See* TEX. R. APP. P. 44.1(a).

## VI. *DTPA Against Lyft and Liberty*

In Neeley's live petition, he—without any specificity—alleges DTPA violations arising from Sections 17.46(b)(5), (7), (12), (24), and 17.50(a)(1), (3), (4) of the Business and Commerce Code. *See* BUS. & COM. §§ 17.46(b)(5), (7), (12), (24), 17.50(a)(1), (3), (4). On appeal, Neeley asserts that "[a]ll of the elements for each of the DTPA sections" have been established by "evidence contained in his affidavit and attachments from Lyft," and the trial court erred in granting summary judgment on this claim.

### A. *Applicable Law*

A plaintiff is required to prove four elements to establish a DTPA claim: (1) that he was a consumer; (2) that the defendant(s) engaged in at least one of the laundry list of specifically prohibited acts; (3) that he detrimentally relied on the false, misleading, or deceptive act or practice; and (4) that the false, misleading, or deceptive act or practice was a producing cause of his injury. *Perez v. Hung Kien Luu*, 244 S.W.3d 444, 446 (Tex. App.—Eastland 2007, no pet.) (citing *Amstadt v.*

27

*U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996)). Additional elements are required by the various subdivisions of Section 17.46(b). *Chandler v. Gene Messer Ford, Inc.*, 81 S.W.3d 493, 501 (Tex. App.—Eastland 2002, pet. denied).

Neeley relies on the following "laundry list" provisions, which make actionable a:

> (5) represent[ation] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not;
>
> (7) represent[ation] that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;
>
> (12) represent[ation] that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;
>
> [and]
>
> (24) fail[ure] to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was *intended to induce* the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

BUS. & COM. § 17.46(b)(5), (7), (12), (24) (emphasis added).

Section 17.50 of the Business and Commerce Code also creates a cause of action for "the use or employment by any person of a false, misleading, or deceptive act or practice" specifically enumerated in subsection 17.46(b) that is relied on by a consumer to the consumer's detriment; "any unconscionable action or course of action"; and "the use or employment by any person of an act or practice in violation of Chapter 541, Insurance Code." *Id.* § 17.50(a)(1), (3), (4).

B. *Lyft's Motion for Summary Judgment*

As noted previously, Lyft's motion for summary judgment addressed only Neeley's fraud-by-misrepresentation claim, and Lyft did not amend its motion

following Neeley's second amended petition, which for the first time brought forth DTPA claims against Lyft.

As we have said, ordinarily, summary judgment may only be granted upon grounds expressly asserted in the summary judgment motion. *See Magee*, 347 S.W.3d at 297 (citing TEX. R. CIV. P. 166a(c)). For reasons explained below, Lyft may nonetheless still be entitled to summary judgment on some of these DTPA claims.

### 1. *False Representations*

The DTPA claims in Neeley's second amended petition are based on the same facts alleged in Neeley's first amended petition. *See id.* Neeley's DTPA claims additionally allege, in part, "false representations" by Lyft—the same as Neeley alleged in his fraud claim in his first amended petition and as addressed in Lyft's motion for summary judgment. Thus, Lyft's motion can be construed as broad enough to encompass the newly asserted DTPA claims, at least with respect to the DTPA claims under Sections 17.46(b)(5), (7), (12) and 17.50(a)(1), (3), (4) of the Business and Commerce Code, which concern false and misleading representations or any unconscionable action or course of action. *See* BUS. & COM. §§ 17.46(b)(5), (7), (12), 17.50(a)(1), (3), (4).

As discussed in the *Fraud* section of this opinion, the record contains no evidence of any false or misleading representation by Lyft. *See generally Moore v. Whitney–Vaky Ins. Agency*, 966 S.W.2d 690, 692 (Tex. App.—San Antonio 1998, no pet.) ("In the absence of some specific misrepresentation by the insurer or agent about the insurance, a policyholder's mistaken belief about the scope or availability of coverage is not generally actionable under the DTPA." (quoting *Sledge v. Mullin*, 927 S.W.2d 89, 94 (Tex. App.—Fort Worth 1996, no writ))). Because the summary-judgment evidence conclusively negates the element of a false representation, the trial court properly granted summary judgment on Neeley's DTPA claims under

Sections 17.46(b)(5), (7), (12) and 17.50(a)(1), (3), (4). *See Sci. Spectrum, Inc.*, 941 S.W.2d at 911. We overrule Neeley's first issue in part on these claims.

### 2. *Failure to Disclose*

Neeley also pleaded a DTPA claim under Section 17.46(b)(24), which penalizes a party's failure to disclose information in certain contexts. *See* BUS. & COM. § 17.46(b)(24). This omission is critical. Section 17.46(b)(24) imposes liability for nondisclosure, not false representation. *See id.* As previously observed, wholly absent from Lyft's motion for summary judgment is any comment on Neeley's failure-to-disclose allegations. Thus, Section 17.46(b)(24) cannot be said to have been even indirectly challenged by Lyft, *see Ruddick*, 2016 WL 3941079, at *3, and therefore, the trial court reversibly erred in granting summary judgment on Neeley's DTPA claim under section 17.46(b)(24) against Lyft. *See Sci. Spectrum, Inc.*, 941 S.W.2d at 911. We sustain Neeley's first issue in part on this claim.

### C. *Liberty's Motion for Summary Judgment*

Unlike with Lyft, Neeley had already asserted DTPA claims against Liberty by the time Liberty filed its motion for summary judgment. Neeley's second amended petition simply revised some of the specific subsections relied upon, but he did not assert a new factual basis for his claims. While Liberty's no-evidence motion for summary judgment failed to identify all the statutory elements of Neeley's DTPA claims as required by Rule 166a(i), *see* TEX. R. CIV. P. 166a(i); *Merriman*, 407 S.W.3d at 248, Liberty did challenge the essential element of damages under the traditional summary judgment standard. *See Sci. Spectrum, Inc.*, 941 S.W.2d at 911. "The DTPA authorizes consumer suits when deceptive acts are the producing cause of '[actual damages] or damages for mental anguish.'" *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 823 (Tex. 2012) (quoting BUS. & COM. § 17.50(a)(1)); *Altecor v. United Prop. & Cas. Ins. Co.*, No. 13-20-00148-CV, 2022

30

WL 548281, at *10 (Tex. App.—Corpus Christi–Edinburg Feb. 24, 2022, pet. denied) (mem. op.) (observing that damages are an element of a DTPA claim).

As detailed above, Neeley's pleaded damages arise exclusively from the denial of policy benefits which he was not entitled to under the terms of the policies. Liberty argued that absent damages of an injury independent from the denial of policy benefits, Neeley's DTPA claims fail. We agree.

Under *Menchaca*, an insured "cannot recover *any* damages based on an insurer's statutory violation if the insured had no right to receive benefits under the policy and sustained no injury independent of a right to benefits." *Menchaca*, 545 S.W.3d at 489; *see also Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 133–34 (Tex. 2019) (reaffirming *Menchaca*). Several sister courts have since applied *Menchaca's* holding to DTPA claims. *See Zhu v. First Cmty. Ins. Co.*, 543 S.W.3d 428, 438 (Tex. App.—Houston [14th Dist.] 2018, pet. dism'd) (applying the rule set forth in *Menchaca* to DTPA claims); *Conlee v. ASI Lloyds*, No. 01-23-00159-CV, 2024 WL 3503067, at *4 (Tex. App.—Houston [1st Dist.] July 23, 2024, no pet.) (mem. op.) (same); *Orange Cup Drive In LLC v. Mid-Continent Cas. Co.*, No. 05-21-00448-CV, 2023 WL 110190, at *7 (Tex. App.—Dallas Jan. 5, 2023, no pet.) (mem. op.) (same). Liberty therefore conclusively negated an essential element of Neeley's DTPA claims, and the trial court did not err by granting summary judgment in Liberty's favor on these claims.

## VII. *Conspiracy*

Finally, Neeley argues on appeal that the parties failed to challenge his conspiracy claims in their respective motions for summary judgment, and therefore, the trial court erred in granting summary judgment on these claims. Civil conspiracy, however, is not an independent tort and requires an underlying tort to survive. *Agar Corp., Inc.*, 580 S.W.3d at 142.

31

Neeley cites to one case for the proposition that reversal is appropriate where a defendant fails to include a challenge to a plaintiff's conspiracy claim in his motion for summary judgment, but he misunderstands the case holding. *See Ortiz v. Collins*, 203 S.W.3d 414, 427 (Tex. App.—Houston [14th Dist.] 2006, no pet.). In *Ortiz*, the intermediate appellate court affirmed in part and reversed in part the trial court's grant of the defendants' motions for summary judgment. The court affirmed the trial court's judgment with respect to the plaintiff's fraud and conspiracy to defraud claims, noting that "[b]ecause summary judgment was proper on his underlying fraud claim based on of a lack of justifiable reliance, summary judgment was proper on [the plaintiff's] conspiracy to defraud claims as well." *Id.* at 422–23. The court then reversed the plaintiff's DTPA-related conspiracy claim, reasoning that "[b]ecause we reverse summary judgment as to Ortiz's DTPA claim against [two defendants], we also reverse the summary judgment as to the DTPA conspiracy claims against them." *Id.* at 427.

The same court's decision in *Zarzana v. Ashley* is more applicable to the facts before us. 218 S.W.3d 152 (Tex. App.—Houston [14th Dist.] 2007, pet. struck). In *Zarzana*, the Fourteenth Court of Appeals held that even though a defendant failed to explicitly address the plaintiff's later-pleaded civil conspiracy to defraud claim by not amending its motion for summary judgment, if summary judgment was proper on the plaintiff's fraud claim, then summary judgment is also proper on his concomitant conspiracy to defraud claim. *Id.* at 162; *see also Valentine v. Fed. Ins. Co.*, No. 14-18-00438-CV, 2020 WL 1467352, at *9 (Tex. App.—Houston [14th Dist.] Mar. 26, 2020, pet. denied) (mem. op.) (assuming without deciding that the trial court erred by granting summary judgment on a conspiracy claim where the defendant did not move for summary judgment on the claim as harmless because the trial court properly granted summary judgment on the underlying challenged claims).

Regarding his claims of conspiracy against Liberty, Neeley pled the underlying tort of fraud in concealing and misrepresenting the policy coverage. As we have held, the trial court properly granted Liberty's motion for summary judgment for the underlying tort, as alleged.

The elements of conspiracy include two or more parties acting in combination to commit an actionable intentional tort. *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 614 (Tex. 1996); *AmeriPath, Inc. v. Hebert*, 447 S.W.3d 319, 343 (Tex. App.—Dallas 2014, pet. denied). The underlying tort for a conspiracy must be an intentional tort. *Barajas*, 927 S.W.2d at 617.

Neeley's conspiracy claims—including those against Lyft—necessarily depended on Liberty's participation in some underlying tort to survive. *See Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 583 (Tex. 2001) ("A civil conspiracy involves a combination of two or more persons with an unlawful purpose or a lawful purpose to be accomplished by unlawful means."); *Zarzana*, 218 S.W.3d at 162; *Valentine*, 2020 WL 1467352, at \*9. Having affirmed the trial court's summary judgment in toto with regard to Liberty, we now affirm summary judgment on Neeley's claim of conspiracy to commit a tort by *both* Liberty and Lyft. Liberty having not committed the alleged underlying tort, leaves Lyft without its alleged co-conspirator—and Lyft cannot conspire with itself. *Fisher v. Yates*, 953 S.W.2d 370, 382 (Tex. App.—Texarkana 1997, pet. denied), *disapproved on other grounds*, *Agar Corp. v. Electro Circuits Int'l*, 580 S.W.3d 136 (Tex. 2019); *see Editorial Caballero, S.A. de C.V. v. Playboy Enters., Inc.*, 359 S.W.3d 318, 337 (Tex. App.—Corpus Christi–Edinburg 2012, pet. denied); *Plotkin v. Joekel*, 304 S.W.3d 455, 488 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Liberty did not commit fraud, the pleaded tort, and therefore there is no meeting of the minds about the alleged object of the conspiracy and agreement or understanding to inflict an intentional tort. *Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 278 (Tex. 1995); *Massey v. Armco*

*Steel Co.,* 652 S.W.2d 932, 934 (Tex. 1983); *MVS Int'l v. Int'l Advert. Sol., LLC,* 545 S.W.3d 180, 196 (Tex. App.—El Paso 2017, no pet.); *see also, e.g., ERI Consulting Eng'rs, Inc. v. Swinnea,* 318 S.W.3d 867, 881 (Tex. 2010). Accordingly, we overrule Neeley's second issue in its entirety, and we overrule his first issue in part on this claim.

## VIII. *This Court's Ruling*

We reverse the trial court's summary judgment order as to Neeley's failure-to-disclose fraud claim against Lyft, as well as Neeley's Section 17.46(b)(24) DTPA claim against Lyft, and we remand those claims to the trial court for proceedings consistent with this opinion.[5] We affirm the trial court's summary judgment order as to Neeley's remaining claims against Lyft. We affirm the trial court's summary judgment order as to Neeley's claims against Liberty.

W. BRUCE WILLIAMS

JUSTICE

February 12, 2026

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

---

[5]Our ruling is based on the summary judgment motions and responses thereto before the trial court at the time of its summary-judgment orders. Nothing in this opinion is intended to comment on the ultimate validity, if any, of Neeley's remaining claims against Lyft on remand.